Filed 6/4/14 Original version and modification and certification orders (5/29/14) attached

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FAY STANIFORTH et al., | D064111 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00093475-CU-MC-CTL) |
| THE JUDGES' RETIREMENT SYSTEM, | |
| Defendant and Respondent; | ORDER MODIFYING OPINION |
| JOHN CHIANG, as State Controller, etc., | |
| Real Party in Interest and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on May 19, 2014, be modified as follows:

On page 18, in the first and second sentences of the second full paragraph, the word "July" is replaced with the word "January" so the sentences read:

"Pensioners' motion argued the action pleaded claims on behalf of seven trial judges whose retirement allowances should have been (but were not) calculated and paid based on the salary of an active trial court jurist as increased by an uncapped COLA until January 5, 1981, consistent with the trial court's construction of *Olson I.* Pensioners also asserted the action pleaded claims on behalf of three appellate court justices whose retirement allowances should have been (but were not) calculated and paid based on the

salary of an active appellate court jurist as increased by an uncapped COLA until January 5, 1987, again consistent with the trial court's construction of *Olson I*."

There is no change in the judgment.

McDONALD, Acting P. J.

Copies to:  All parties

2

Filed 5/19/14; as modified and certified for publication 5/29/14 (see orders foll. opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FAY STANIFORTH et al., | D064111 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00093475-CU-MC-CTL) |
| THE JUDGES' RETIREMENT SYSTEM, | |
| Defendant and Respondent; | |
| JOHN CHIANG, as State Controller, etc., | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge. Affirmed in part and reversed in part.

Jorn S. Rossi and Paul G. Mast for all Plaintiffs and Appellants except William Reppy, Jr.

William Reppy, Jr., in pro. per.

Reed Smith, Harvey L. Leiderman and Jeffrey R. Rieger for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

Plaintiff Faye Staniforth filed this action, on behalf of herself and similarly situated persons (collectively pensioners), alleging numerous claims against defendant and respondent the Judges' Retirement System (JRS). The principal claim raised by pensioners' action was that JRS had not adhered to its obligations to pensioners under *Olson v. Cory* (1980) 27 Cal.3d 532 (*Olson I*) and, as a result, pension payments stretching back over three decades had been underpaid to pensioners (*Olson I* claims). This action sought a declaratory judgment that, under *Olson I*, jurists who served on California's trial court or appellate court bench during the time Government Code[1] section 68203 provided for unlimited cost of living adjustments (COLA's) were entitled to have their (or their surviving beneficiaries') pensions adjusted upward based on the applicable COLA for each year, and that the cap on the amount of COLA's (enacted by legislation that amended § 68203 and took effect on January 1, 1977) could not constitutionally be applied to pensions earned by jurists who served on California's trial court or appellate court bench during the time that section 68203 provided for unlimited COLA's. The petition also sought a writ of mandate compelling JRS to adhere to *Olson I* and to recalculate the amount of judicial pensions owed to pensioners using uncapped COLA's, and to pay arrearages and interest for the decades of underpaid pension payments.

JRS demurred to pensioners' *Olson I* claims. JRS argued pensioners' *Olson I* claims were in direct conflict with a correct reading of *Olson I* and that, contrary to

---

[1]     All further statutory references are to the Government Code unless otherwise specified.

2

pensioners' claims, JRS had correctly applied the teaching of *Olson I* to these pensioners and had correctly calculated judicial pensions since *Olson I*. The trial court agreed and sustained JRS's demurrer to pensioners' *Olson I* claims without leave to amend. The court also denied pensioners' subsequent motion to vacate in part the order sustaining the demurrer to pensioner's *Olson I* claims without leave to amend and, after dismissing pensioners' remaining claims for failure to exhaust administrative remedies, entered judgment in favor of JRS. Pensioners appealed.

On appeal, pensioners limit the claims of error to (1) the order sustaining JRS's demurrer to pensioner's *Olson I* claims without leave to amend, and (2) the court's denial of pensioners' subsequent motion, which in effect sought leave to amend to separately state (and thereby preserve) certain claims by certain pensioners. The propriety of the first order turns on an interpretation of the impact of *Olson I*, as amplified in both *Olson v. Cory* (1982) 134 Cal.App.3d 85 (*Olson II*) and *Olson v. Cory* (1983) 35 Cal.3d 390 (*Olson III*), on judicial pensions. The propriety of the second order involves distinct issues requiring a separate but interdependent analysis.

I

OLSON I AND JUDICIAL PENSIONS

A. The Competing Claims

JRS contends *Olson I* held the only class of active jurists to whom the legislative cap on COLA's could not be constitutionally applied were active jurists whose terms began prior to January 1, 1977, and who had some number of years left on their terms during which they were entitled to earn a salary increased by the uncapped COLA's (the

3

so-called "protected term," see *Olson II, supra*, 134 Cal.App.3d at p. 90). JRS also contends *Olson I* was equally clear the legislative cap on COLA's could constitutionally be applied to a salary earned by a jurist (after completion of the protected term) to new terms of office commencing January 1, 1977. (*Olson I, supra*, 27 Cal.3d at pp. 538-540.) JRS asserts *Olson I* further made clear that the *only* class of *retired* jurists to whom the legislative cap on COLA's could not constitutionally be applied were jurists who retired between 1970 and 1976 to the extent their pensions were measured as a percentage of the salary payable to an active jurist during a protected term. JRS argues that, under the correct reading of *Olson I*, it was entitled to calculate and pay pensioners the appropriate percentage of the relevant active jurist's salary payable for terms of office to which the cap on COLA's was lawful, e.g. terms of office commencing January 1, 1977.

Pensioners' competing contention rests on a different reading of *Olson I*. Pensioners' argument rests on an extrapolation from *Olson I's* statement that the 1977 cap statute was "unconstitutional as to certain judicial pensioners." (*Olson I, supra*, 27 Cal.3d at p. 541.) Pensioners contend the import of that phrase from *Olson I* was that jurists who retired during the period between 1970 to 1976, when section 68203 provided for unlimited COLA's that indirectly increased their pensions, acquired a vested right to unlimited COLA's, and the cap on the amount of COLA's that took effect on January 1, 1977, could not constitutionally be applied to constrain the growth of their pensions. Pensioners also assert jurists who retired after 1976 but nevertheless earned some of their pension rights by serving on California's trial court or appellate court bench prior to 1976 enjoy the same constitutional rights to unlimited COLA's as do the 1970-1976 retirees

4

under the application of *Olson I's* principles in the decisions of *In re Marriage of Alarcon* (1983) 149 Cal.App.3d 544 and *Legislature v. Eu* (1991) 54 Cal.3d 492. Under this construction, pensioners assert JRS has underpaid pensioners for nearly three decades because JRS improperly paid them a percentage of the salary payable to actual active jurists (e.g. jurists whose salary was constitutionally subjected to limited COLA increases), because pensioners appear to argue JRS should have paid them a percentage of the salary an active jurist would have hypothetically earned if that active jurist's salary had continued to rise based on unlimited COLA's after January 1, 1977.

In the proceedings below, JRS demurred to the causes of action of the complaint insofar as they were based on *Olson I*, arguing those claims were in direct conflict with *Olson I* and therefore did not state claims on which relief could be granted. Pensioners conceded the only issues on their *Olson I* claims involved questions of law. The trial court agreed with JRS's analysis of *Olson I*, and sustained JRS's demurrer to the causes of action of the complaint based on *Olson I* without leave to amend. Pensioners challenge that ruling, asserting the trial court misapplied the teaching of *Olson I*.

B. *Olson I*

Because judicial pensions are derivative from the salaries payable to a currently active judge (§ 75000 et seq.), an understanding of the impact of *Olson I* on pensions necessarily commences with an examination of the scheme for salaries payable to active jurists.

Since 1964, judicial salaries have been prescribed by sections 68200 through 68202, subject to increases provided in section 68203. Section 68203, as amended in

5

1969, provided: "In addition to the increase provided under this section on September 1, 1968, on the effective date of the 1969 amendments to this section and on September 1 of each year thereafter the salary of each justice and judge named in Sections 68200 to 68202, inclusive, shall be increased by that amount which is produced by multiplying the then current salary of each justice or judge by the percentage by which the figure representing the California consumer price index as compiled and reported by the California Department of Industrial Relations has increased in the previous calendar year." (Stats. 1969, ch. 1507, § 1.) However, section 68203 was again amended in 1976, effective January 1, 1977, to provide: "On July 1, 1978, and on July 1 of each year thereafter the salary of each justice and judge named in Sections 68200 to 68202, inclusive, shall be increased by that amount which is produced by multiplying the then current salary of each justice or judge by the percentage by which the figure representing the California consumer price index as compiled and reported by the California Department of Industrial Relations has increased in the previous calendar year, *but not to exceed five percent* (5%)." (Stats. 1976, ch. 1183, § 4, italics added.)

The impact of the 1976 amendment on the salaries payable to active jurists, and on the pensions derivatively paid to retired jurists, was the focus of *Olson I*. A class of plaintiffs brought an action in 1977 alleging they, as active jurists and as recipients of judicial pensions, were entitled to a declaration that the 1976 amendment was unconstitutional and they therefore were entitled to salary and pension increases in accordance with the version of section 68203 in effect prior to the amendment. (*Olson*

6

*III, supra*, 35 Cal.3d at p. 396.) In 1978, the trial court rendered judgment declaring the 1976 amendment to section 68203 was unconstitutional as to this class. (*Ibid*.)

*Olson I* began by examining the permissible application of the 1976 amendment for salaries payable to *active* jurists. *Olson I* noted the 1976 amendment purported to apply to limit salary increases for all jurists, including those who had commenced a term of office before January 1, 1977 (the effective date of the 1976 amendment) and had some years remaining on that term after the effective date of the 1976 amendment. (*Olson I, supra*, 27 Cal.3d at pp. 537-538.) The court concluded judges who had commenced a term before January 1, 1977, had a vested right to the compensation promised to them when they entered their term of office, including the right to uncapped COLA's, and even if "salary benefits are diminished by the Legislature during a judge's term, or during the unexpired term of a predecessor judge [citations], the judge is nevertheless entitled to the contracted-for benefits during the remainder of such term. The right to such benefit accrues to a judge who served *during* the period beginning 1 January 1970 to 1 January 1977. . . ." (*Id*. at pp. 539-540.) However, once an active jurist "completes one term during which he was entitled to unlimited cost-of-living increases and elects to enter a new term has impliedly agreed to be bound by salary benefits then offered by the state for the different term. Thus, while a judge is entitled to a salary based on unmodified [section 68203] throughout a term ending, for instance, in 1978, his salary for a new term beginning on or after the effective date of the 1976 amendment -- 1 January 1977 -- will be governed by the statute as amended. Likewise, a judge entering office for the first time on or after 1 January 1977, including a judge

7

entering upon his own term or upon the unexpired term of a predecessor judge, cannot claim any benefit based on section 68203 before the 1976 amendment." (*Id*. at p. 540.) Accordingly, *Olson I* concluded section 68203 "cannot be constitutionally applied to . . . a judge or justice during any term of office, or unexpired term of office of a predecessor, if the judge or justice served some portion thereof (a 'protected term') prior to 1 January 1977 . . . ." (*Olson I, supra,* 27 Cal.3d at p. 546.)

Olson I then addressed the claim that the 1976 amendment abridged vested rights of judicial pensioners. (*Olson I, supra,* 27 Cal.3d at p. 540.) The court noted that, during the period between December 31, 1969, and January 1, 1977, "a judicial pensioner was entitled to receive benefits based on a specified percentage of the salary of a judge holding the judicial office to which the retired or deceased judge was last elected or appointed. [Citation.] The salary for such a judicial office--if the retired or deceased judge served in office during the period 1970 to 1977--was covenanted to increase annually with the increase in the CPI. The 1976 limitation on increases in judicial salaries is, in turn, calculated to diminish benefits otherwise available to those judicial pensioners. Such modification of pension benefits works to the disadvantage of judicial pensioners by reducing potential pension increases, and provides no comparable new benefit." (*Id*. at p. 541.) Because there was no demonstrated justification for impairing these rights or any comparable new advantages included, *Olson I* concluded section 68203 as amended was "unconstitutional as to certain judicial pensioners." (*Ibid*.) *Olson I* then explained why it concluded section 68203 as amended was unconstitutional as to these "certain judicial pensioners":

8

"Contractually, each judicial pensioner is entitled to some fixed percentage of the salary payable to the judge holding the particular judicial office to which the retired or deceased judge was last elected or appointed. [Citations.] Accordingly, a judicial pensioner cannot claim impairment of a *vested* right arising out of the 1976 amendment except when the judge holding the particular judicial office could also claim such an impairment. The resolution of pensioner vested rights, then, is dependent on the foregoing resolution of judges' vested rights left unimpaired by the 1976 amendment." (*Olson I, supra,* 27 Cal.3d at pp. 541-542.)

Although *Olson I* noted some judicial pensioners (e.g. those whose benefits are based on judicial services terminating during the time section 68203 provided for unlimited cost-of-living increases) may have had a "vested" right to a pension benefit that included a proportionate share of the salary of the judge or justice occupying the particular judicial office, "including the incumbent judge's or justice's unlimited cost-of-living increases," but other judicial pensioners (e.g. those whose benefits were based on judicial services terminating before the effective date of applicable law providing for unlimited cost-of-living increases) had no "vested" right to benefits resulting therefrom, *Olson I* declared it was "not necessary for our purposes to determine a judicial pensioner's right as being *vested*. [Original italics.] *Vested or not, a pensioner's right entitles him or her to benefits based on the prevailing salary for the judge or justice occupying the particular judicial office, regardless of the date of termination of judicial services giving rise to the pension.* Finally, as in the case of judges or justices who enter upon a new or unexpired term of a predecessor judge after 31 December 1976, *benefits of judicial pensioners based on the salaries of such judges will be governed by the 1976 amendment*." (*Olson I, supra,* 27 Cal.3d at p. 542, italics added, fns. omitted.)

9

*Olson I* concluded section 68203 "cannot be constitutionally applied to (1) a judge or justice during any term of office, or unexpired term of office of a predecessor, if the judge or justice served some portion thereof (a 'protected term') prior to 1 January 1977, and (2) a judicial pensioner whose benefits are based on some proportionate amount of the salary of the judge or justice occupying that office." (*Olson I, supra,* 27 Cal.3d at p. 546.) Because the trial court's judgment had invalidated *any* application of the 1976 amendment, *Olson I* reversed the trial court judgment except "as to any judge or justice who served any portion of his term or the unexpired term of a predecessor prior to 1 January 1977, and as to judicial pensioners whose benefits are based on the salary of such a judge or justice." (*Id.* at p. 548.)

*Olson I*, reiterating its conclusion as to pensioners, specifically stated that (unlike the " 'troubling result' " reached in an earlier case in which the pensioner appeared entitled to a double increment of increase), "[t]he net effect of our holding in the instant case is to allow a judicial pensioner but one increment of increase, that being the increment of pro-rata increase in the salary of the judge occupying the office formerly occupied by the retired or deceased judge." (*Olson I, supra,* 27 Cal.3d at p. 542, fn. 7.)

C. Subsequent Case Law

In *Olson III, supra*, 35 Cal.3d 390, the court examined whether interest was due on the payments owed to active and retired judges under the declaratory judgment entered in *Olson I*.[2] Indeed, *Olson III* noted the entitlement to interest was the *only* unresolved

---

2      In the interregnum between *Olson I* and *Olson III*, the appellate court in *Olson II*, *supra*, 134 Cal.App.3d 85, addressed an action by the plaintiff class (active and retired

10

issue between the plaintiff and the defendants. (*Olson III, supra,* 35 Cal.3d at p. 401 ["we are assured by plaintiffs, and by counsel speaking for most of the county defendants, that all issues in this litigation have now been resolved except for the one now presented to this court -- that of plaintiffs' right to interest"].) In *Olson III,* the state contended interest should not be awarded on unpaid salaries and pension payments because interest was not payable until after *Olson I* was decided and, until "this court's 1980 decision in *Olson* v. *Cory I* [determined] that the 1976 amendment to section 68203 was invalid as to certain judges and pensioners *during certain periods*" (*Olson III,* at p. 403, italics added), the state was prevented from making such payments. The *Olson III* court ultimately concluded the plaintiffs were "entitled to interest on judicial pension payments adjudged in [*Olson I*]." (*Id.* at p. 406.)

D. <u>Analysis</u>

Pensioners' argument is predicated on the language from *Olson I* that section 68203 as amended was "unconstitutional as to certain judicial pensioners." (*Olson I, supra*, 27 Cal.3d at p. 541.) Although somewhat opaque, pensioners appear to argue this passage from *Olson I* necessarily drew a distinction between these "certain judicial pensioners"--those who retired between 1970 and 1976 and thereby acquired a "vested"

---

judges) who challenged whether a constitutional amendment, designed to supersede *Olson I* and deprive of them of the benefits of the salary boosted by uncapped COLA's (for active judges) or their share thereof (for the relevant pensioners), was enforceable. *Olson II* held, consistent with *Olson I,* that the amendment could not be enforced against the plaintiff class. Although largely irrelevant to this proceeding, *Olson II* did *restate* that "[t]he pension to which retired judges and spouses of deceased judges were and are entitled *is a percentage of the salary payable* at the time payment of the pension falls due *to the judge holding the judicial office to which such retired or deceased judge was last elected to or appointed.*" (*Olson II,* at p. 90, italics added.)

11

right in having their pensions adjusted based on the unlimited COLA's provided under the unamended version of section 68203--and all other judicial pensioners (those who retired before 1970 or after 1976 and hence had "no *vested* rights to benefits resulting [from the uncapped COLA's]," *Olson I, supra,* 27 Cal.3d at p. 542), and claims the " 'vested' right . . . including . . . unlimited cost-of-living increases" owned by these "certain judicial pensioners" must necessarily be independent of and in addition to the rights *all* pensioners have, i.e. an interest in one of the percentage statutes.  Pensioners appear to assert the additional and independent vested right embedded in the phrase "certain judicial pensioners" is the right to have their judicial pensions calculated as a percentage of the salary that hypothetically would have been earned by an active jurist if such jurist's salary had continued to rise based on unlimited COLA's after January 1, 1977.

Even assuming pensioners may raise this argument,[3] our reading of *Olson I* convinces us the meaning ascribed by pensioners to the phrase "certain judicial

---

3    We have substantial doubt pensioners may now assert they are entitled to have their judicial pensions calculated as a percentage of the salary of a hypothetical judge, both under the "claim preclusion" (or bar/merger) feature of res judicata and under the collateral estoppel feature of res judicata.  Claim preclusion operates to bar the maintenance of a later action if (1) the claim decided in the former action (here, the extent to which judicial pensions were impacted by the cap on COLA's) is identical to the claim presented in this action, (2) there was a final judgment on the merits, and (3) pensioners were a party (or a privy to a party) to the prior adjudication.  (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1015.)  The bar/merger aspect of res judicata applies even if pensioners did not *actually* articulate every legal theory available to them in *Olson I*.  (See 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 410, p. 1051 [res judicata applies where same primary right is being asserted even though second action is "framed to present a different legal theory of recovery"].  Thus, res judicata in its primary aspect would appear to bar pensioners from interposing a new theory in support of the same claim adjudicated in *Olson I*.

pensioners" cannot be reconciled with either the statutory scheme governing judicial pensions or with *Olson I's* treatment of judicial pensions.

The statutory scheme is clear that judicial pensioners are entitled to an allowance that is calculated as a fixed percentage of whatever salary is payable to the judge holding the particular judicial office to which the retired judge was last elected or appointed. (§§ 75032, 75033.5, 75076.) Although the right to the relevant fixed percentage is vested, and may not be impaired absent comparable new advantages, there is nothing in the JRS scheme that conferred on judicial pensioners a vested right to be exempted from changes in the underlying salary structure for active jurists. (Cf. *International Assn. of*

---

Moreover, it also appears the secondary aspect of res judicata--collateral estoppel--also is operable here. Pensioners not only *could* have raised this new theory to support their claim to a pension unencumbered in perpetuity from any cap on COLA's, but it appears pensioners or their privies in fact *did* raise that theory, and the *Olson I* court nowhere expressly embraced that theory. Collateral estoppel appears present because the issue sought to be precluded from relitigation (pensions based on COLA's in perpetuity) is identical to that actually litigated in *Olson I*, because the Court of Appeal decision (vacated by the grant of review and ultimately resulting in *Olson I*) described the pensioners' contention in the same terms as pensioners now argue. (See *Olson v. Cory* (1979) 156 Cal.Rptr. 127, 134 ["Plaintiff pensioners contend that, regardless of the application of the 1976 amendment to sitting judges, the pensions of judicial pensioners must be computed by reference to the hypothetical salaries that would have become payable to active judges in the absence of the 1976 amendment. They argue that [uncapped COLA's] created an enforceable expectation that judicial pensions would increase annually with increases in the cost-of-living . . . ."].) Although the underlying court opinion was vacated, it appears that "[f]or purposes of applying collateral estoppel, evidence extrinsic to the judgment roll may be used to ascertain what issues were determined in the former action." (*Southwell v. Mallery, Stern Warford* (1987) 194 Cal.App.3d 140, 144; *Tevis v. Beigel* (1957) 156 Cal.App.2d 8, 14.) Because it appears this issue was (1) actually litigated, (2) the decision in *Olson I* is final and on the merits and was between the same parties or privy's as are present here (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341), and *Olson I* did not expressly grant judicial pensioners a right to have their pension decoupled from the salaries earned by actual jurists in favor of a pension based on a hypothetical salary, the primary aspect of res judicata would also appear to bar pensioners' present argument.

13

*Firefighters v. City of San Diego* (1983) 34 Cal.3d 292, 301, 302-303 [increasing employee contribution rates is allowed because, although an employee's " 'vested' contractual rights may not be destroyed or impaired, [the crucial inquiry must] identify exactly what employee rights *are* vested under City's retirement system," and because of system-contemplated increased contribution rates, there is no vested right to be free from increased contribution].)  Although the 1969 amendment to section 68203 (for unlimited COLA adjustments to active jurists salaries) and the 1976 amendment to section 68203 (placing a cap on COLA adjustments to active jurists' salaries) indirectly impacted pensioners, it did so only because of (and to the extent that) pensioners' allowances were derivative of active jurists' salaries, and not because those statutes purported to have any direct application to the allowances paid to judicial pensioners or purported to confer any new vested rights on judicial pensioners that were separate and nonderivative from the rights enjoyed by active jurists.

This construction of the statutory scheme confirms our understanding that the import of the holdings of *Olson I* was not to decouple the rights of judicial pensioners from the salaries paid to actual active jurists.  Instead, we read *Olson I* as confirming the allowances for judicial pensioners remained tethered to the salaries paid to actual (rather than hypothetical) active jurists, and *Olson I* held the allowances for judicial pensioners were temporarily exempted from the cap on COLA's because, and only to the extent that, salaries for some actual active jurists were likewise temporarily exempted from the cap on COLA's.  The *Olson I* court's analysis *began* by examining the extent to which salaries for some actual active jurists (e.g. those whose terms began before January 1, 1977, and

14

had some period remaining during the protected term) were grandfathered under the unamended section 68203 and its unlimited COLA adjustments, and explained this group of actual active jurists were entitled to unlimited COLA's for the remainder of the protected term, but not thereafter, reasoning that such active jurists impliedly understood and agreed that new and less favorable terms and conditions could be imposed that diminished their salaries in future years. (*Olson I*, *supra*, 27 Cal.3d at pp. 537-540.)

The *Olson I* court then turned to the extent to which the 1976 amendment to section 68203, "in addition to impairing the vested rights of judges in office, also impairs those of judicial pensioners." (*Olson I, supra,* 27 Cal.3d at p. 540, fn. omitted.) The court, noting a judicial pensioner is "entitled to receive benefits based on a specified percentage of the salary of a judge holding the judicial office to which the retired or deceased judge was last elected or appointed," recognized that during the period "[b]etween 31 December 1969 and 1 January 1977, . . . [t]he salary for such a judicial office . . . was covenanted to increase annually with the increase in the CPI. The 1976 limitation on increases in judicial salaries is, in turn, calculated to diminish benefits otherwise available to those judicial pensioners. Such modification of pension benefits works to the disadvantage of judicial pensioners by reducing potential pension increases, and provides no comparable new benefit." (*Id*. at p. 541.) Because there was no demonstrated justification for impairing these rights nor any comparable new advantages included, *Olson I* concluded section 68203 as amended was "unconstitutional as to certain judicial pensioners." (*Olson I,* at p. 541.) *Olson I* then expanded on why it

15

concluded section 68203 as amended was unconstitutional as to these "certain judicial pensioners":

> "Contractually, each judicial pensioner is entitled to some fixed percentage of the salary payable to the judge holding the particular judicial office to which the retired or deceased judge was last elected or appointed. [Citations.] Accordingly, a judicial pensioner cannot claim impairment of a *vested* right arising out of the 1976 amendment except when the judge holding the particular judicial office could also claim such an impairment. *The resolution of pensioner vested rights, then, is dependent on the foregoing resolution of judges' vested rights left unimpaired by the 1976 amendment*." (*Olson I,* at pp. 541-542, second italics added.)

*Olson I* found the amendment unenforceable as to some judicial pensioners only to the extent it was unenforceable as to the active jurists' salary on which the judicial pensioners' allowance was derivative. Indeed, this conclusion was independent of whether or not the judicial pensioners' rights were or were not deemed "vested," because *Olson I* unequivocally reiterated that it was "not necessary for our purposes to determine a judicial pensioner's right as being *vested*. [Original italics.] *Vested or not, a pensioner's right entitles him or her to benefits based on the prevailing salary for the judge or justice occupying the particular judicial office . . . .*" (*Olson I, supra,* 27 Cal.3d at p. 542, italics added.) Moreover, *Olson I* made clear that the grandfathered benefits enjoyed by some active jurists and (derivatively) by some judicial pensioners were not of unlimited duration because it noted that, "as in the case of judges or justices who enter upon a new or unexpired term of a predecessor judge after 31 December 1976, *benefits of judicial pensioners based on the salaries of such judges will be governed by the 1976 amendment*." (*Ibid*., italics added, fn. omitted.)

16

We conclude *Olson I* merely reaffirmed that judicial pensioners had a right to a percentage participation in the salaries paid to active jurists, including "the increment of pro-rata increase in the salary of the judge occupying the office formerly occupied by [the pensioner, which] salary fluctuates with cost of living increases" (*Olson I, supra,* 27 Cal.3d at p. 542, fn. 7), but did not confer on or recognize any right of judicial pensioners to be exempted from changes in the underlying salary structure applicable to such active jurists, including changes to the COLA's adopted by the 1976 amendment.[4] To the extent pensioners' claims are based on the theory that *Olson I* held judicial pensioners are exempted from changes in the underlying salary structure applicable to actual active jurists, those claims must fail, and the trial court correctly sustained JRS's demurrer without leave to amend.

---

4    For this reason, pensioners' reliance on *Legislature v. Eu, supra,* 54 Cal.3d 492 and *In re Marriage of Alarcon, supra,* 149 Cal.App.3d 544 is misplaced. Both cases held that promised pension benefits cannot be impaired once they are vested, even if the pensioner later begins a new term of office that (if it was the prospective pensioner's initial term in office) would have been governed by reduced pension benefits. (*Legislature v. Eu,* at pp. 527-534; *Marriage of Alarcon*, at pp. 550-553.) However, in *Alarcon*, the pensioner had been expressly promised that a benefit of his office would be to earn a fully vested (albeit deferred) right to a pension, and the court concluded the amended law purporting to remove that right could not be enforced. (*Alarcon,* at pp. 551-554.) Similarly, in *Eu*, the pensioner had been expressly promised that a benefit of the office included pension benefits that would become vested and successively higher from additional years of service, and the court concluded an amended law purporting to remove those rights could not be enforced against those who had accrued vested rights under the former system. (*Eu,* at pp. 527-534.) Although these cases are correct, they are of no aid to pensioners because, although " 'vested' contractual rights may not be destroyed or impaired, plaintiff fails to identify exactly what employee rights *are* vested under [the] retirement system, and thereby misses the crucial distinction . . . ." (*International Assn. of Firefighters v. City of San Diego, supra,* 34 Cal.3d at p. 301.) The expressly promised and vested rights of pensioners is to receive a pro-rata share of an identified salary (e.g. the salary of the judge occupying the office formerly occupied by the pensioner), not to receive a pro-rata share of a hypothetical salary.

17

## II

## THE REMAINING ISSUE

After the trial court entered its order sustaining without leave to amend JRS's demurrer to pensioners' *Olson I* claims, pensioners moved to partially vacate that order. This motion asserted that, even under the interpretation of *Olson I* espoused by JRS and adopted by the trial court, their action had asserted viable claims on behalf of 10 class members (the 10 claimants) who were allegedly not paid the amounts due to them under *Olson I* as interpreted by the trial court.

Pensioners' motion argued the action pleaded claims on behalf of seven trial judges whose retirement allowances should have been (but were not) calculated and paid based on the salary of an active trial court jurist as increased by an uncapped COLA through July 5, 1981, consistent with the trial court's construction of *Olson I*. Pensioners also asserted the action pleaded claims on behalf of three appellate court justices whose retirement allowances should have been (but were not) calculated and paid based on the salary of an active appellate court jurist as increased by an uncapped COLA through July 5, 1987, again consistent with the trial court's construction of *Olson I*. Pensioners' motion to vacate argued that, because the complaint alleged these 10 claimants had not been paid their retirement allowances during the 1970's and 1980's in accordance with this rate, the demurrer should be overruled as to the claims made by the 10 claimants for these time periods, or alternatively, that pensioners should be granted leave to amend to allow the 10 claimants to more clearly and separately plead these claims on behalf of these claimants.

18

The trial court denied the motion, concluding (1) this category of unpaid pension payments by the 10 claimants was "not clearly part of the petition," and (2) even if these claims had been separately pleaded, this category of claims was time-barred by Code of Civil Procedure section 337.5; and (3) the death of the 10 claimants ended any further obligations by JRS to this group of retirees under section 20164. Pensioners argue the ruling on their motion was error.

We conclude the trial court erred and should have granted pensioners leave to amend to separately state the alleged claims for the 10 claimants. The first basis for the court's ruling--that this portion of unpaid pension payments by the 10 claimants was "not clearly part of the petition"--was erroneous. The petition and complaint below asserted claims by numerous individuals covering lengthy periods of time, including years the trial court correctly found were outside the ambit of *Olson I's* protected periods during which uncapped COLA adjustments to salaries were owed to certain jurists and (derivatively) to certain pensioners. However, it appears the exhibits attached to the complaint also reflected that at least a *segment* of each of the claims pleaded by the 10 claimants--alleged underpayments *during* the protected period--were based on underpayments that would have fallen *within* the ambit of *Olson I's* protected periods, and JRS does not contend otherwise. The incorporation by reference of these exhibits, a permissible method for asserting factual averments underlying a cause of action (see, e.g., *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 608-609), was adequate to make this segment of unpaid pension payments by the 10 claimants a part of the petition, and it was error to find to the contrary. To the extent this aspect of the trial

19

court's ruling was that this segment was not "clearly" alleged, it was error not to grant leave to amend to allow these 10 claimants to more clearly elucidate this segment of their claim. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

The second ground for the court's denial of the motion was that this segment of the claims of the 10 claimants was time-barred by Code of Civil Procedure section 337.5, which places a 10-year statute of limitations on actions on a judgment. (*Id*. at subd. (b).) However, a demurrer ordinarily challenges defects on the face of the complaint (*Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 590), and there is nothing on the face of pensioners' petition revealing any part of this segment of the claims of the 10 claimants was part of a judgment that would have triggered the limitations period under Code of Civil Procedure section 337.5. Although a court may consider matters outside the pleading that are subject to a proper request for judicial notice (*Lazzarone,* at p. 590), and the trial court here apparently concluded the judgment in *Olson I* triggered the 10-year period of limitations,[5] the time under Code of Civil Procedure section 337.5 only begins to run upon entry of a final enforceable judgment (*Kertesz v. Ostrovsky* (2004) 115 Cal.App.4th 369, 373), which requires a final determination of the rights of the parties within the meaning of Code of Civil Procedure section 577 and " ' " 'leaves nothing to be done but to enforce by execution what has been determined.' " ' " (*Center for Biological Diversity v. California Fish & Game Com.* (2011) 195 Cal.App.4th 128,

---

[5] The trial court, citing Code of Civil Procedure section 337.5, subdivision (b), ruled that "[a]ny claims by these 10 judges for benefits under Olson v. Cory would have expired 10 years after Olson v. Cory decision, decided in 1980."

20

141, fn. 7.) As explained by *Olson III*, *Olson I* did *not* result in a final judgment on which execution could proceed:

> "because the declaratory judgment adjudicated in *Olson v. Cory I* was not in itself enforceable. The purpose of declaratory relief is 'to enable the parties to shape their conduct so as to avoid a breach.' [Quoting *Babb v. Superior Court* (1971) 3 Cal.3d 841, 848.] Though declaratory relief may properly be accompanied by coercive relief [citation], the judgment in *Olson v. Cory I* was purely declaratory. It contained no enforceable provision, such as one directing a particular party to pay a specified sum to another party." (*Olson III, supra,* 35 Cal.3d at p. 400.)

Because the only judicially noticed judgment was not one on which the 10-year statute of limitations could have commenced running, and no other subsequent judgment was introduced below on which the trial court below could properly have concluded all of the claims of the 10 claimants were actually encompassed therein and hence time-barred,[6] it was error to conclude on demurrer that the time bar of Code of Civil

---

[6] Arguably, some final enforceable judgment was subsequently entered by the trial court on remand from *Olson III* that would have triggered Code of Civil Procedure section 337.5. However, the record below contains no *request* for judicial notice of any judgment entered by the trial court after remand, much less the *actual* judgment entered after remand. Accordingly, it is impossible to determine the scope of any judgment actually entered (i.e. for what time periods were damages awarded by the final judgment), or whether any (or all) of these claimants were members of the class in whose favor the judgment awarded monetary compensation for underpayments. (See *Olson III, supra,* 35 Cal.3d at pp. 398-399 [noting the plaintiffs' 1980 notice of class action advised that " '[i]f you are a member of the class who does not request exclusion and you wish to be included in, obtain the benefits of, and *be bound by the final judgments* entered in this class action, you need do nothing,' " italics added by *Olson III*].) Additionally, even assuming these 10 claimants were awarded damages by the final judgment entered after remand, at least three of these claimants pleaded claims in the present action that potentially could not have been barred by an award encompassed in the final judgment entered after remand. Specifically, three of these claimants (Justices Aiso, Friedman and Reppy) appear to be appellate court justices whose *Olson I* claim alleges they were entitled to be (but were not) paid amounts based on uncapped COLA's *through the end of*

21

Procedure section 337.5 precluded pensioners from amending their petition to state a viable cause of action for this segment of the claims of the 10 claimants.

The final ground for the trial court's denial of the motion was that all of JRS's obligations to these 10 claimants were extinguished under section 20164, subdivision (a). Although that subdivision specifies the obligations of the system continues "throughout the lives of the respective retired members, and thereafter until all obligations to their respective beneficiaries under optional settlements have been discharged," it contains no explicit statute of limitations for accrued but unpaid pension payments that might form a chose in action that the decedent's estate or trust might be entitled to assert. Instead, the only *explicit* statute of limitations described in section 20164 is the three-year limitations period[7] provided in subdivision (b) "[f]or the purposes of payments into or out of the retirement fund for adjustment of errors or omissions," which provides three-year limitation on the *system's* right to collect for erroneous payments out of the system (*id*. at subds. (b)(1) & (b)(3)), but that subdivision also specifies that "[i]n cases where this system owes money to a member or beneficiary, the period of limitations shall not apply."  (*Id*. at subd. (b)(2).)  Although there are undoubtedly statutes of limitations that apply when the decedent's heir or trust is authorized to receive the amounts due to a retired jurist that were accrued and unpaid at the time of the jurist's death (see § 75006), the limitations are not specified in section 20164.

---

*1986*.  It is difficult to imagine how a judgment entered after remand in 1983 from *Olson III* would have encompassed alleged underpayments that had not yet occurred.

[7]     Section 20164 provides for a longer period when the erroneous payment from the system is the result of fraud by the member.  (*Id*. at subd. (c).)

22

We caution that our conclusion here is a limited one: the trial court should not have dismissed this segment of the alleged claims for these 10 jurists *on demurrer* but instead should have granted pensioners leave to amend to separately state this limited segment of claims. Whether these claims, once distilled, may be subjected to a motion for summary judgment based on properly introduced extrinsic evidence, or based on other statutes of limitations that may be applicable but were not raised below, are matters that must be determined on remand.

## DISPOSITION

The trial court is directed to vacate its order denying pensioners' motion to partially vacate the order sustaining respondent's demurrer without leave to amend, and to enter a new and different order permitting pensioners leave to amend the complaint to separately state claims for alleged underpayment of pensions as described in Part II of this opinion. In all other respects, the judgment is affirmed. Each party shall bear its own costs on appeal.

McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

23

Filed 5/29/14

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FAY STANIFORTH et al., | D064111 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00093475-CU-MC-CTL) |
| THE JUDGES' RETIREMENT SYSTEM, | |
| Defendant and Respondent; | ORDER MODIFYING OPINION |
| JOHN CHIANG, as State Controller, etc., | |
| Real Party in Interest and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on May 19, 2014, be modified as follows:

On page 18, in the first and second sentences of the second full paragraph, the word "through" is replaced with the word "until" so the sentences read:

"Pensioners' motion argued the action pleaded claims on behalf of seven trial judges whose retirement allowances should have been (but were not) calculated and paid based on the salary of an active trial court jurist as increased by an uncapped COLA until July 5, 1981, consistent with the trial court's construction of *Olson I.* Pensioners also asserted the action pleaded claims on behalf of three appellate court justices whose retirement allowances should have been (but were not) calculated and paid based on the

salary of an active appellate court jurist as increased by an uncapped COLA until July 5, 1987, again consistent with the trial court's construction of *Olson I*."

There is no change in the judgment.

BENKE, Acting P. J.

Copies to: All parties

2

Filed 5/29/14

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FAY STANIFORTH et al., | D064111 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00093475-CU-MC-CTL) |
| THE JUDGES' RETIREMENT SYSTEM, | |
| Defendant and Respondent; | ORDER CERTIFYING OPINION FOR PUBLICATION |
| JOHN CHIANG, as State Controller, etc., | |
| Real Party in Interest and Respondent. | |

THE COURT:

The opinion filed May 19, 2014, is ordered certified for publication.

BENKE, Acting P. J.

Copies to: All parties