Filed 4/21/15  Vos v. Sandwood Enterprises CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| WAYNE MARTIN VOS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SANDWOOD ENTERPRISES, INC., <br><br> Defendant and Respondent. | D066687 <br><br><br> (Super. Ct. No. RIC1204766) |

APPEAL from a judgment of the Superior Court of Riverside County, Paulette Durand Barkley, Judge.  Affirmed.

Jerome D. Stark for Plaintiffs and Appellants.

Law Offices of William B. Hanley and William B. Hanley for Defendant and Respondent.

Appellants Wayne Martin Vos and Susan Vos[1] appeal from a judgment dismissing their action against respondent Sandwood Enterprises, Inc. (Sandwood) after the trial court sustained Sandwood's demurrer to the complaint without leave to amend on

---

[1]     We refer to the parties at times by their first names to avoid confusion.

the ground that appellants' causes of action for equitable subrogation; imposition of constructive trust, injunctive relief and damages were barred by the doctrine of res judicata.

Appellants contend the trial court erred by finding res judicata applied, and although the decision of division three of this district in a nonpublished opinion (*Sandwood Enterprises, Inc. v. Vos* (June 27, 2011, G042239, G042426) (*Sandwood I*)) addressed ownership rights to real property located in Perris, California (the Perris property), it did not address the matters appellants sought to adjudicate in the present action (*Sandwood II*). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2007, Vos Industries, Wayne Martin Vos (Marty) and Susan Vos sued Sandwood, alleging causes of action for conversion, constructive fraud, unjust enrichment, accounting, preliminary and permanent injunction, appointment of receiver, and constructive trust. Sandwood and Wayne K. Vos (Wayne) cross-complained. Following a bench trial, the court found appellants were the sole owners of the Perris property, which was not a corporate opportunity of Sandwood's.

*Sandwood I*

We rely on *Sandwood I* for a summary of the issues presented and the parties' relationship to each other. The Court of Appeal pointed out it was inferring all factual

---

[2]    We deny Sandwood's request for judicial notice of certain court filings because some of those documents were not considered by the trial court, others are duplicative of documents in the appellate record, and none are necessary for our resolution of this appeal.

findings necessary to support the judgment because appellants had not requested a statement of decision in the trial court: "This case essentially boils down to this: father [Wayne] accuses son [Marty] of stealing from [Sandwood] through a *related* company [Vos Industries, which is owned by Marty and Susan] and father fires him; son accuses father and siblings of stealing from his *independent* company after his father fires him."

*Sandwood I* stated these facts regarding the parties' business dealings: "In July 2006, Vos Industries purchased rock crushing equipment, some of it financed by Sandwood, and began rock crushing in Corona, California. Sandwood and Vos Industries essentially operated as one company. [¶] Sandwood's lease for its Orange property was about to expire and its lease payment was likely to increase substantially. In January 2007, Marty purchased [the Perris property], in case Sandwood had to move. Marty eventually negotiated a new lease for Sandwood's existing location in Orange.".

The *Sandwood I* court stated: "Marty admitted he did not speak with Wayne about the Perris property, although he did speak with Wayne generally about purchasing the property. . . . [¶] Marty testified he purchased the Perris property with his and Susan's personal funds. However, Marty conceded he transferred approximately $1.7 million from Sandwood to Vos Industries between 2003 to 2007."

On September 10, 2007, Wayne terminated Marty. Sandwood had $309 in the bank. The same day, Wayne appointed his daughter, Traci Lyn Stewart (Traci), treasurer and secretary of Sandwood. Wayne, Rick (Wayne's stepson), and Traci were directors.

The evidence relating to different ways Marty transferred thousands of dollars from Sandwood to Vos Industries was set forth in *Sandwood I*: "Marty and Susan spend

3

very little time responding to Sandwood, Rick, Traci, and Jason's claim the purchase of the Perris property was a corporate opportunity. They assert the [trial] court's findings were 'specific,' the money was 'traced,' and ownership was established. They provide no citations to the record to support their claims. [¶] Vos Industries issued a check for $10,000 to open escrow to purchase the Perris property to crush rocks, Sandwood's and Vos Industries' concern, in October 2006. Around the same time Marty transferred $128,000 from Sandwood to Vos Industries. And after Susan and he wrote a check for $10,000 to Vos Industries, Marty wrote himself three separate checks for $10,000 each, and Marty admitted at trial Sandwood paid his salary, not Vos Industries."

The *Sandwood I* court ruled the Perris property was a corporate opportunity for Sandwood: "Obviously, rock crushing is reasonably incident to Sandwood's present business and is one in which it has the capacity to engage. When Marty purchased the Perris property, he did so for Sandwood. Additionally, the documentary evidence and Marty's testimony support the conclusion Marty used Sandwood's money to open escrow on the property, and although not relevant to this issue he collected rent from Vos Industries on the property. There was evidence Marty and Susan obtained a second mortgage on their house to purchase the Perris property, but this does not compel the conclusion the purchase of the Perris property was not a corporate opportunity for Sandwood for the reasons above. Based on the record before, [*sic*] we conclude the purchase of the Perris property was a Sandwood corporate opportunity. Thus, the [trial] court should have imposed a constructive trust on the Perris property for the benefit of Sandwood."

4

*Sandwood II*

In May 2012, appellants filed the operative first amended verified complaint alleging causes of action for equitable subrogation; imposition of constructive trust, injunctive relief and damages against Sandwood. They alleged: "In 2007, the lease for [Sandwood] was scheduled to terminate. [Wayne] found the Perris property and thought that it would be a good location to relocate [Sandwood] in the event the lease for the property in city of Orange could not be renewed. The court [in *Sandwood I*] found that the deposit of ten thousand dollars ($10,000) came from [Sandwood]; however, the balance of the purchase price was financed by plaintiffs' borrowing money against their personal residence . . . . Title in the Perris Property was taken by [appellants], trustees of the Vos Family Trust . . . . [¶] On or about November 30, 2006, [appellants], in their individual capacities, entered into a fixed rate home equity loan ("Citibank Loan") in the amount of three hundred sixty[-]four thousand dollars ($364,000), secured by a deed of trust on the Stone Haven Property. . . . [¶] On or about October 27, 2006 [*sic*], the $364,000.00 in loan proceeds from the Citibank Loan was used for the purchase of the Perris property." (Some capitalization omitted.)

Sandwood demurred to the complaint on grounds appellants sought to relitigate the Perris property's ownership, which *Sandwood I* had resolved in Sandwood's favor. The trial court sustained the demurrer, finding res judicata barred appellants' claims.

DISCUSSION

Appellants contend res judicata is not applicable because although the court in *Sandwood I* imposed a constructive trust on the Perris property, no court adjudicated the

5

issue of whether appellants, in their individual capacities, are entitled to reimbursement for purchasing the Perris property with their personal funds. Specifically, appellants contend: "[With the filing of *Sandwood I*], which is entirely silent on the issue of whether or not [Sandwood] takes title to the Perris property free and clear of any liens or encumbrances, including appellants' $364,000.00 loan, appellants' claims and issues regarding unjust enrichment and reimbursement for the purchase money for the Perris property sprang into being and became viable, giving rise to the instant action." (Some capitalization omitted.)

## I. *Standard of Review*

Our review standard on this demurrer is settled. We review the allegations of the complaint de novo to determine if it alleges facts sufficient to state a claim for relief under any legal theory. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 156.) " 'In doing so, we treat the demurrer as admitting all material facts properly pleaded. " 'Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Apple Inc.*, at p. 156.) "We may also consider matters that have been judicially noticed." (*Committee for Green Foothills*, at p. 42.)

"If we conclude the complaint fails on any grounds stated in the demurrer, we must then consider whether there is a ' "reasonable possibility" ' the complaint's defect(s) can be cured by an amendment. [Citation.] If it is apparent the complaint's defects can be cured, the trial court has abused its discretion and we will reverse the judgment. [Citation.] Alternatively, if it is apparent the complaint's defects cannot be cured, no

6

abuse of discretion has occurred and we will affirm the judgment. [Citation.] The burden of proving the reasonable possibility of such a curative amendment falls ' " 'squarely on the plaintiff[s].' " ' " (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506-507.)

## II. *Res Judicata Bars the Present Action*

The California Supreme Court explains: " 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' [Citation.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896-897, fn. omitted.)

Res judicata or claim preclusion operates to bar the maintenance of a later action if (1) the claim decided in the former action is identical to the claim presented in this action; (2) there was a final judgment on the merits; and (3) the parties in the current action were parties (or a privy to a party) to the prior adjudication. (*Staniforth v. Judges' Retirement System* (2014) 226 Cal.App.4th 978, 988.)

" 'Two proceedings are on the same cause of action if they are based on the same "primary right." [Citation.] The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based.

7

[Citation.] The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the defendant's wrongful act in breach of that duty. [Citation.] [¶] An injury is defined in part by reference to the set of facts, or transaction, from which the injury arose.' " (*Silverado Modjeska Recreation & Parks District v. County of Orange* (2011) 197 Cal.App.4th 282, 297-298.) "Thus, a single cause of action is based on the harm suffered, rather than on the particular legal theory asserted or relief sought by the plaintiff." (*Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 991, italics omitted; see also *Boblitt v. Boblitt* (2010) 190 Cal.App.4th 603, 610; *Friedman Prof. Management Co., Inc. v. Norcal Mutual Ins. Co.* (2004) 120 Cal.App.4th 17, 28 ["core concept" of the primary rights doctrine is the harm suffered].)

Similarly, a cause of action is independent of the remedy and relief sought; seeking more than one type of relief in connection with a single injury does not create more than one cause of action. (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 682.) Further, the parties are not required to have actually litigated an issue in the prior lawsuit for it to be precluded, as res judicata also bars issues that *could have been* litigated, as long as the later-raised issues constitute the same cause of action involved in the prior proceeding. (*Federation of Hillside and Canyon Associations v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202; *Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1245.)

8

Here, we conclude res judicata applies because the parties in both actions are the same and the same primary right raised in *Sandwood II*—who owns the Perris Property—was adjudicated on the merits in *Sandwood I*.[3]

The *Sandwood I* court's determination that appellants' purchase of the Perris property was a corporate opportunity properly belonging to Sandwood was grounded in equity. It quoted case law stating the basis of the doctrine of corporate opportunity must

---

[3]     Specifically, in Sandwood's appellate reply brief in *Sandwood I*, it argued in favor of a constructive trust by setting forth evidence tending to support its claim that Marty borrowed money from Sandwood or Vos Industries to fund the Perris property's purchase: "For the down payment for the purchase of the Perris property, Vos Industries writes a $10,000 check to First American Title. Then Marty Vos, two months later, writes a personal check to Vos Industries to allegedly repay the $10,000. But three days later Marty Vos takes the $10,000 back from Vos Industries for himself. . . . [¶] On October 22, 2006[,] a $10,000 check is written to First American Title as deposit for Perris property from Vos Industries . . . . Then on December 12, 2006, Marty Vos deposits his personal check of $10,000 in Vos Industries account . . . . Then on December 13, 2006, three days later, Marty Vos writes a $50,000 check from Sandwood to Vos Industries . . . . Then Marty Vos writes a check from Vos Industries to himself for $10,000 . . . . Essentially, Marty Vos launders money through the two companies so he can claim he owns the Perris property." (Some capitalization omitted.)
        The Court of Appeal in *Sandwood I* relied on some of the same evidence in imposing a constructive trust: "Marty testified he purchased the Perris property with his and Susan's personal funds. However, Marty conceded he transferred approximately $1.7 million from Sandwood to Vos Industries between 2003 and 2007. . . . [¶] There are two checks dated October 5, 2006, from Sandwood to Vos Industries for $11,000 and $12,000. There is a check dated October 11, 2006, from Sandwood to Vos Industries for $10,000. On October 27, 2006, Marty wrote a check from [Vos Industries] to First American Title in the amount of $10,000 for the purchase of the Perris property. Four days later, Marty wrote a check from Sandwood to Vos Industries for $20,000, and two weeks later he wrote another check from Sandwood to Vos Industries for $25,000. There is a check dated December 6, 2006, from Marty and Susan to Vos Industries for $10,000. Less than one week later, Marty wrote a check from Sandwood to Vos Industries for $50,000. Finally, Marty wrote a check from Sandwood to Vos Industries for $10,000 on January 31, 2007. Marty wrote himself checks from [Vos Industries] in the amount of $10,000 on June 15, 2007, July 13, 2007, and November 19, 2007."

be found in the unfairness on the particular facts of a fiduciary taking advantage of an opportunity when the interests of the corporation justly call for protection. (*New v. New* (1957) 148 Cal.App.2d 372, 384-385.) Further, *Sandwood I* imposed the equitable remedy of a constructive trust on the Perris property. " 'A constructive trust is a remedial device primarily created to prevent unjust enrichment; equity compels the restoration to another of property to which the holder thereof is not justly entitled.' " (*Kraus v. Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 373.) " 'The essence of the constructive trust theory is to prevent unjust enrichment and to prevent a person from taking advantage of his own wrongdoing.' " (*Martin v. Kehl* (1983) 145 Cal.App.3d 228, 237.)

It follows that in the present case equity would not be served by requiring Sandwood to repay appellants' loan used to purchase the Perris property, particularly in light of *Sandwood I's* conclusions—binding on us as law of the case—that appellants had borrowed up to $1.7 million from Sandwood and, in buying the Perris property, appellants took advantage of a corporate opportunity belonging to Sandwood. (Accord, *Lucky United Properties Investments, Inc. v. Lee* (2013) 213 Cal.App.4th 635, 654 [" ' "The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." ' "].)

In any event, although we agree with appellants that the record does not explicitly state whether Sandwood should reimburse appellants in the amount of $364,000 for the loan used to purchase the Perris property, we conclude that silence is immaterial because

appellants had an opportunity to litigate that specific issue in *Sandwood I*, and their failure to do so bars this claim under the doctrine of res judicata. (*Federation of Hillside and Canyon Associations v. City of Los Angeles, supra,* 126 Cal.App.4th at p. 1202.)

In seeking to escape the effects of res judicata, appellants claim *Sandwood I* created a new situation by imposing the constructive trust. We have no quarrel with the proposition that new facts or rights that arise after the filing of an initial pleading may not serve as a basis for res judicata. "As a cause of action is framed by the facts in existence when the underlying complaint is filed, res judicata 'is not a bar to claims that arise after the initial complaint is filed.' [Citations.] For this reason, the doctrine may not apply when 'there are changed conditions and new facts which were not in existence at the time the action was filed upon which the prior judgment is based. [Citations.]' [Citation.] This exception to the doctrine encompasses claims based on rights that arise after the filing of the complaint in the first action, but before judgment is entered. [Citation.] . . . 'The general rule that a judgment is conclusive as to matters that could have been litigated "does not apply to new rights acquired pending the action which might have been, but which were not, required to be[,] litigated." ' " (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 227-228; see also *Allied Fire Protection* (2005) 127 Cal.App.4th 150, 155.)

Contrary to appellants' claim, however, it was not the *Sandwood I* decision that gave rise to the issue of unjust enrichment or the need to resolve the question of whether appellants were entitled to reimbursement for the cost of loan used to purchase the Perris property. Rather, the constructive trust cause of action in *Sandwood I* arose out of a

11

claim appellants unjustly enriched themselves at Sandwood's expense. In resolving that issue, the appellate court did nothing more than restore appellants' rights by imposing a constructive trust on the Perris property.

Appellants have not met their burden of showing they can amend their complaint to avoid the effects of res judicata. In the trial court, their counsel requested leave to amend: "The appellate court establish[ed] this constructive trust, so give us the right to establish an equitable lien right against this trust that the appellate court established." But the trial court responded that those issues could have been raised in *Sandwood I.* We agree. In sum, the trial court did not err in sustaining the demurrer to these causes of action without leave to amend. Appellants did not present any proposed amendments in their opening brief in this court to cure these pleading defects.

DISPOSITION

The judgment is affirmed.  Respondent Sandwood Enterprises, Inc. is awarded costs on appeal.


O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

13