[No. B095944. Second Dist., Div. One. Mar. 27, 1997.]

ORANGE UNIFIED SCHOOL DISTRICT et al., Plaintiffs and Appellants,
v.
RANCHO SANTIAGO COMMUNITY COLLEGE DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Ruiz & Schapiro, Celia M. Ruiz, Priscilla S. Carson and William M. Quinn, Jr., for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Silvia M. Diaz and Dana T. Cartozian, Deputy Attorneys General, Joseph R. Symkowick, Michael E. Hersher, Littler, Mendelson, Fastiff, Tichy & Mathiason, Richard J. Currier, Susan J. Boyle, Parker, Covert & Chidester, Spencer E. Covert, Michael Y. Toy, Liebert, Cassidy & Frierson and Mary L. Dowell for Defendants and Respondents.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Six unified school districts appeal from an order of dismissal entered after the trial court sustained without leave to amend the demurrers of three community college districts and granted a judgment on the pleadings to the Chancellor and the Board of Governors of the California Community Colleges.[1] We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

On July 27, 1994, appellants filed a second amended petition for a writ of mandate in which they sought an order directing the community college

---

[1]The appellants are Orange Unified School District, Anaheim Union High School District, Placentia-Yorba Linda Unified School District, Covina Valley Unified School District, West Covina Unified School District and Charter Oak Unified School District. The community college respondents are Rancho Santiago Community College District, North Orange County Community College District and Mt. San Antonio Community College District. The appellants also sued the State Board of Education, Superintendent of Public Instruction, State Controller, Department of Finance and Director of Finance. The court also dismissed the action as to these respondents, whose liability was contingent upon the liability of the other respondents.

respondents to not operate adult education programs in violation of Education Code sections 8530 through 8533 during the 1994-1995 academic year and beyond, to not seek funding apportionments for programs operated in contravention of the mutual agreement requirements of the law and to transfer the programs described by Education Code sections 8530 and 8531 to appellants, along with the funding for those programs. Appellants also sought to compel the Chancellor and the Board of Governors of the California Community Colleges to cease budgetary calculations and certifications based on the community college respondents offering of these courses. Finally, they sought to compel these respondents and the state Board of Education to resolve differences among the parties in reaching mutual agreements.

Appellants allege they offer adult education programs as provided for in Education Code sections 8530 through 8531. They have an exclusive right to offer adult basic education and high school diploma programs and a qualified right to provide adult vocational training and continuing education. Appellants allege they cannot obtain funding for additional courses due to "[s]tate-funding caps on new programs." They could obtain funding through the community colleges' transfer of existing programs and the concomitant funding. Appellants further allege there are no existing mutual agreements with the community college respondents that cover their adult education programs. While there were agreements in the past, those agreements have terminated.

In 1994, legal counsel for the Chancellor of the California Community Colleges and for the state Department of Education rendered opinions interpreting Education Code sections 8530 through 8538. These opinions supported appellants' view of the matter.

On November 18, 1994, before ruling on the demurrers, the trial court ordered the state boards to attempt a resolution of the dispute. Mediation efforts failed, after which the matter returned to the court. On March 30, 1995, the court sustained without leave to amend the community college respondents' demurrers. Two months later, the Chancellor and Board of Governors of the California Community Colleges moved for judgment on the pleadings. In their view, the court's ruling on the demurrers resolved all questions concerning their legal obligations. The remaining state respondents joined in the motion. The court granted the motion and dismissed from the action "all remaining respondents."

CONTENTS

I

Appellants contend the trial court erred in sustaining the demurrers of the community college districts.

II

Appellants additionally contend the trial court erred in granting the motion for judgment on the pleadings of the Chancellor and the Board of Governors of the California Community Colleges.

DISCUSSION

Preliminarily, we consider whether the appeal is timely insofar as it challenges the sustaining of the demurrers. The trial court sustained the community college respondents' demurrers without leave to amend but did not, at that time, dismiss the action as to these respondents. Thereafter, the court granted the motion for judgment on the pleadings of the Chancellor and the Board of Governors of the California Community Colleges. At the same time, the court dismissed from the action "all remaining respondents." Appellants timely appealed from this order.

The community college respondents argue that the appeal is not timely as to the order sustaining the demurrers, in that the order implicitly dismissed them from the action. The later order dismissing "all remaining respondents," they assert, applied only to the state respondents.

The problem with the community college respondents' argument is that an order sustaining a demurrer is not appealable. It may be reviewed only on appeal from a subsequent order of dismissal. (*I. J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327, 331 [220 Cal.Rptr. 103, 708 P.2d 682]; *Hill* v. *City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695 [40 Cal.Rptr.2d 125].) While this court may save a premature appeal by deeming an order sustaining a demurrer to incorporate a judgment of dismissal (*Nowlon* v. *Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1440-1441 [2 Cal.Rptr.2d 683]), we will not use this device to *defeat* an appeal. There is only one order dismissing parties from this action, the order of July 12, 1995, granting the motion for judgment on the pleadings and dismissing from the matter "all remaining respondents." It matters not that the state respondents requested this dismissal; inasmuch as the community college districts still were respondents at that point, the order applied to them. In short, appellants' appeal is timely as to the sustaining of the demurrers.

## I

Appellants contend the trial court erred in sustaining the demurrers of the community college districts. We disagree.

In determining the merits of a demurrer, all material facts pleaded in the complaint and those which arise by reasonable implication, but not conclusions of fact or law, are deemed admitted by the demurring party. (*Moore* v. *Conliffe* (1994) 7 Cal.4th 634, 638 [29 Cal.Rptr.2d 152, 871 P.2d 204]; *Interinsurance Exchange* v. *Narula* (1995) 33 Cal.App.4th 1140, 1143 [39 Cal.Rptr.2d 752].) On appeal, we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. (*Lee* v. *Bank of America* (1990) 218 Cal.App.3d 914, 919 [267 Cal.Rptr. 387]; *Mayflower Ins. Co.* v. *Pellegrino* (1989) 212 Cal.App.3d 1326, 1332 [261 Cal.Rptr. 224].)

The question presented here is purely one of law. It is a matter of statutory interpretation only.

Statutes must be construed with reference to the entire statutory scheme of which they are a part (*People* v. *Comingore* (1977) 20 Cal.3d 142, 147 [141 Cal.Rptr. 542, 570 P.2d 723]) so as to harmonize their effect in conformity with legislative intent (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 12 [177 Cal.Rptr. 325, 634 P.2d 352]; *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]). Insofar as it is possible to do so, seemingly conflicting or inconsistent statutes will be harmonized so as to give effect to each. (See *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) When, however, conflicting statutes cannot be reconciled, the later enactments supersede the earlier ones. (*City of Petaluma* v. *Pac. Tel. & Tel. Co.* (1955) 44 Cal.2d 284, 288 [282 P.2d 43]; cf. *People* v. *McCaskey* (1985) 170 Cal.App.3d 411, 415 [216 Cal.Rptr. 54].)

In interpreting a statute, a fundamental rule is that the court must " 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.] In determining the intent, the court 'turns first to the words themselves for the answer.' [Citation.] [¶] The words must be read in context, ' "keeping in mind the nature and obvious purpose of the statute where they appear." ' [Citation.] In ascertaining the legislative intent, courts should consider not only the words used, but 'the object in view, the evils to be remedied, the legislative history [and] public policy . . . .' [Citation.]" (*People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].) Finally, the courts will accord great weight to an administrative agency's construction of pertinent statutes, generally departing from

such a construction only if it clearly is erroneous or unauthorized. (*Simplicity Pattern Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 900, 905 [167 Cal.Rptr. 366, 615 P.2d 555]; *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].)

Appellants based their petition for a writ of mandate and request for declaratory relief on the language of a small constellation of Education Code provisions, sections 8510 through 8538. Education Code sections 8500 through 8538 comprise the adult education portion of the Education Programs—State Master Plans part of the Education Code (part 6, commencing with section 8000). Sections 8500, 8510, and 8530 through 8537 were enacted in 1976 (Stats. 1976, ch. 1010, § 2). Section 8538 was enacted at the same time by the same statute, although it then was numbered section 8512. It was renumbered section 8538 and amended by Statutes 1978, chapter 380, section 32.

These statutes define certain terms pertinent to adult education, assign responsibility for certain programs and grant permission for the offering of others. Education Code section 8510 defines certain terms, only two of which are pertinent to this matter. " 'Adult basic education' is education in communication and computational skills to and including the 12th grade level, including English as a second language [ESL] and citizenship." (*Id.*, subd. (a).) " 'Mutual agreement' means an agreement between two or more governing boards of districts." (*Id.*, subd. (d).)

Education Code sections 8530 through 8534 assign responsibility or grant permission for the offering of several categories of adult education programs. "Adult basic education is the responsibility of high school and unified school districts except in those instances where by mutual agreement the responsibility is assigned to a community college district." (*Id.*, § 8530.) "The high school diploma program is the responsibility of the high school and unified school districts, but courses leading to a high school diploma may be offered by a community college district pursuant to a mutual agreement." (*Id.*, § 8531.) "Vocational and occupational training and retraining programs for adults may be made available in high school, unified, and community college districts by mutual agreement." (*Id.*, § 8532.) "Adult continuing education, including but not limited to, parent education, consumer education, civic education, education in special fields, and education in the arts and the humanities, may be made available in high school, unified, and community college districts by mutual agreement." (*Id.*, § 8533.) "Programs for adults involving postsecondary programs that meet the standards prescribed by the Board of Governors of the California Community Colleges for credit and noncredit courses are the responsibility of community college districts." (*Id.*, § 8534.)

Appellants interpret these provisions as meaning a community college may offer adult basic education and high school diploma courses only if a high school or unified school district enters into a mutual agreement with the community college that it may do so. In addition, either a high school or unified school district or a community college may offer vocational or occupational programs and adult continuing education, but only if they mutually agree to this.

Appellants base their interpretation in part on the Legislature's assignment of "responsibility" for offering certain programs in Education Code sections 8530 through 8534. A "responsibility" is a duty or burden, something for which one is accountable. (Webster's New Collegiate Dict. (1979 ed.) p. 979, col. 1; Black's Law Dict. (5th ed. 1979) p. 1179, col. 2.) It is not, however, a right.

In support of their interpretation, appellants also place great reliance on the language of Education Code sections 8536 through 8538. These sections concern the process of reaching mutual agreements and the manner in which districts may receive apportioned funding for adult noncredit courses.

"The governing board of every district affected by this chapter shall make all reasonable efforts to reach a mutual agreement when such an agreement is required and shall develop procedures for this purpose." (Ed. Code, § 8536.) "If a mutual agreement cannot be reached by the district governing boards, the points of disagreement shall be resolved by the State Board of Education and the Board of Governors of the California Community Colleges." (*Id.*, § 8537.) "[F]or noncredit classes or programs offered in community colleges pursuant to this chapter, average daily attendance for state apportionment purposes shall only be calculated for such classes or programs which by mutual agreement are the responsibility of the community colleges pursuant to Sections 8530 and 8531; and . . . for noncredit classes or programs offered in the community colleges and for classes for adults offered in high schools or adult schools pursuant to this chapter, average daily attendance for state apportionment purposes shall only be calculated for such classes or programs which by mutual agreement are the responsibility of the community colleges or of the high school or unified school districts pursuant to Sections 8532 and 8533." (*Id.*, § 8538.)

As appellants see it, these provisions establish that mutual agreements are essential to community colleges' provision of most adult education instruction. Without such agreements, the community colleges are not entitled to apportioned funding based on average daily attendance.

Attractive as appellants' interpretation may be at this juncture, Education Code sections 8510 through 8538 cannot be read in isolation. They must be interpreted and, if possible, harmonized with all other related portions of the Education Code. (*Landrum* v. *Superior Court*, *supra*, 30 Cal.3d at p. 12; *California Mfrs. Assn.* v. *Public Utilities Com.*, *supra*, 24 Cal.3d at p. 844.)

The Legislature also enacted part 24 of the Education Code, entitled "School Finance," in 1976. (Stats. 1976, ch. 1010, § 2, p. 3218 et seq.) Chapter 5.3, entitled "Conditions on Apportionments and Allowances," was added to part 24 in 1979; it became operative on July 1, 1980. (Stats. 1979, ch. 282, § 28.5, p. 986.) Education Code section 41976 is part of chapter 5.3.

Subdivision (a) of Education Code section 41976 authorizes school districts and county superintendents of schools to offer certain classes and courses "for apportionment purposes from the adult education fund." These include "(1) Adult programs in parenting, including parent cooperative preschools, classes in child growth and development, and parent-child relationships, and classes in parenting. [¶] (2) Adult programs in elementary and secondary basic skills and other courses and classes required for the high school diploma. Apportionment for these courses and classes may only be generated by students who do not possess a high school diploma, except for remedial academic courses or classes in reading, mathematics, and language arts. [¶] (3) Adult education programs in English as a second language. [¶] (4) Adult education programs for immigrants eligible for educational services in citizenship, English as a second language, and workforce preparation classes in the basic skills of speaking, listening, reading, writing, mathematics, decisionmaking and problem solving skills, and other classes required for preparation to participate in job specific technical training. [¶] (5) Adult education programs for substantially handicapped persons. [¶] (6) Adult short-term vocational programs with high employment potential. [¶] (7) Adult programs for older adults. [¶] (8) Adult education programs for apprentices. [¶] (9) Adult programs in home economics. [¶] (10) Adult programs in health and safety education." (*Ibid.*) Subdivision (b) of Education Code section 41976 states that "[n]o state apportionment shall be made for any course or class which is not set forth in subdivision (a)."

In short, as of July 1, 1980, unified school districts have been authorized to offer and receive funding for all of these courses. To authorize is "[t]o empower; to give a right or authority to act. . . . [¶] 'Authorized' is sometimes construed as equivalent to 'permitted'; or 'directed', or to similar mandatory language. . . . [Citation.]" (Black's Law Dict, *supra*, p. 122, col. 2; accord, Webster's New Collegiate Dict., *supra*, p. 75, col. 1.) Power

likewise is the right and authority to act. (Black's Law Dict., *supra*, p. 1053, col. 1.)

Just as Education Code section 41976, subdivision (a), authorizes school districts to provide a wide variety of adult education programs, so, too, does Education Code section 78401, subdivision (a), empower community colleges to "establish and maintain classes for adults for the purpose of instruction in civic, vocational, literacy, health, homemaking, technical and general education." This section was part of the 1976 enactment. (Stats. 1976, ch. 1010, § 2, p. 4068.) When Education Code section 41976 became effective in 1980, however, the community colleges lacked a similar authority to apportioned funding. Accordingly, upon the enactment of Education Code section 41976, the Legislature favored high school and unified school districts as the providers of adult education.

Former Education Code section 84711, subdivision (a), added by Statutes 1983, chapter 565, section 3, pages 2419-2420,[2] lists the community noncredit courses and classes eligible for funding. The eligible courses and classes are the same as those listed for high schools and unified school districts in Education Code section 41976, subdivision (a). At this point, therefore, the school districts and community colleges had a coequal right to receive apportioned funding for the delineated courses and programs. This marks the beginning of a shift in focus.

Under Education Code section 41976.1, operative July 1, 1993, "[n]otwithstanding Section 41976, any school district may offer adult education courses and classes in the adult education programs described in Section 41976 provided that district qualifies for funding to begin those courses or classes pursuant to Section 52616.18." (Stats. 1992, ch. 1193, § 1.) Education Code section 52616.18, also operative July 1, 1993 (Stats. 1992, ch. 1193, § 5), permits a school district not previously operating an adult education program pursuant to Education Code section 41976 to "apply to the State Department of Education for initial program approval and funding to begin any adult education programs specified in Section 41976" if "[t]he district enters into a written delineation of function agreement pursuant to Chapter 3 (commencing with Section 8500) of Part 6 for the fiscal year for which initial funding is authorized between the applicant school district and the community college district in the same geographical area." (Ed. Code, § 52616.18, subd. (a)(2).) If a school district has a current delineation of function agreement with a community college district, it is "authorized to

---

[2]Education Code section 84711 became inoperative July 1, 1995, and was repealed January 1, 1996. (Ed. Code, § 84713.) It was replaced verbatim, however, by Education Code section 84757. (Stats. 1995, ch. 758, § 126.)

divide the responsibility for offering courses pursuant to Section 41976 by mutual agreement of the boards of those districts." (*Id.*, subd. (c).)

In other words, effective July 1, 1993, notwithstanding the authority granted school districts in Education Code section 41976 to offer a broad range of adult education programs, Education Code section 52616.18 limited the right of school districts to *begin* offering such programs. They could do so only if they reached mutual agreement with a community college district to that effect.

Education Code section 66010.4 is part of the Donahoe Higher Education Act (Ed. Code, § 66022 et seq.), enacted in 1991 (Stats. 1991, ch. 1198). Education Code section 66010.3 provides that "[t]he public elementary and secondary schools shall be responsible for academic and general vocational instruction from kindergarten and grades 1 to 12, inclusive, including preparation of pupils for postsecondary instruction, future participation in California's economy and society, and adult instruction to the extent of state support." Education Code section 66010.4 sets forth the "missions and functions of California's . . . institutions of higher education." Education Code section 66010.4, subdivision (a)(1) delineates as the primary mission of community colleges the offering of "academic and vocational instruction at the lower division level for both younger and older students, including those persons returning to school." "In addition to the primary mission of academic and vocational instruction, the community colleges *shall* offer instruction and courses" that provide remedial instruction and, "*in conjunction with the school districts*, instruction in English as a second language, adult noncredit instruction, and support services which help students succeed at the postsecondary level." (*Id.*, subd. (a)(2)(A), italics added.) These are deemed "essential and important functions of the community colleges." (*Ibid.*) The Legislature also deems essential and important, but does not mandate, "[t]he provision of adult noncredit education curricula [by the community colleges] in areas defined as being in the state's interest." (*Id.*, subd. (a)(2)(B).)

Together, these sections provide "mission statements" for various components of the state educational system. Under Education Code section 66010.3, the elementary and secondary schools *must* provide academic and vocational instruction through the 12th grade, as well as adult instruction of the same type "to the extent of state support." Under Education Code section 66010.4, the community colleges *must* provide postsecondary academic and vocational instruction, remedial instruction and "in conjunction with the school districts, instruction in English as a second language, adult noncredit instruction" and postsecondary support services. They also are encouraged strongly to provide other "adult noncredit education curricula."

The phrase "in conjunction with" means conjointly, in association, or in unison. (Webster's New Collegiate Dict., *supra*, p. 237, col. 1; see also Black's Law Dict., *supra*, p. 273, col. 2.) In the context of Education Code section 66010.4, subdivision (a), it means the community colleges must provide English as a second language (ESL) instruction, adult noncredit instruction and postsecondary support services, but have no exclusive mission to provide these services. Rather, the statute contemplates that the community colleges will act conjointly or in unison with the school districts to provide these programs.

To summarize, as of the enactment of the Donohoe Higher Education Act in 1991, community colleges are *required* to offer a broad range of adult education programs. These include lower division college academic and vocational instruction, remedial instruction, ESL instruction, adult noncredit instruction and postsecondary support services. This partially overlaps with the definition of "adult basic education" found in Education Code section 8510, subdivision (a), the responsibility for which generally is assigned to the school districts by Education Code section 8530. It overlaps completely with the vocational and occupational training mentioned in Education Code section 8532 and with the education in special fields and in the arts and humanities mentioned in Education Code section 8533. Community colleges also are *strongly encouraged* to offer the broad range of other adult education programs covered by Education Code section 8533. To the extent that the community colleges are required to provide remedial instruction, there also is some overlap with the high school diploma program covered by Education Code section 8531.

Both school districts and community college districts have the authority, power or right to offer the full range of programs. In addition, the Legislature has provided specifically that all of the enumerated programs are eligible for apportioned funding. By enacting Education Code sections 41976.1 and 52616.18 in 1993, section 66010.3 in 1991 and section 66010.4 in 1990, however, the Legislature expressed a preference that community colleges offer the broad range of adult education programs listed in Education Code sections 41976 and 87411. The Legislature required that community colleges offer most forms of adult education. As of the operative date, moreover, a school district not previously operating an adult education program could not do so unless it had funding available and secured a mutual, or delineation of function, agreement from the community college district. (Ed. Code, § 52616.18, subd. (a).)

Inasmuch as community colleges *must* provide most of this instruction and are strongly encouraged to provide the balance of it, the requirement that they obtain a mutual agreement before offering these programs or seeking

funding apportionment would interfere with the fulfillment of their mission. Moreover, the requirement of a mutual agreement before either school districts or community college districts could obtain funding apportionment for the programs delineated in Education Code sections 8532 and 8533 would limit the broad right the Legislature has conferred on both to offer these programs and receive apportioned funding.

While the state Department of Education and the Chancellor of the California Community Colleges have interpreted Education Code sections 8530 through 8538 in the same manner as do appellants, they have done so without considering the effect of later enactments. Inasmuch as their interpretation of the adult education scheme clearly is erroneous, we need not accord it the great weight to which it ordinarily would be entitled. (*Simplicity Pattern Co.* v. *State Bd. of Equalization, supra,* 27 Cal.3d at p. 905; *Culligan Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d at p. 93.)

The mutual agreement requirement, found in Education Code sections 8530 through 8538, is irreconcilably inconsistent with the authority and mandates found in the later-enacted statutes, Education Code sections 66010.4 and 84711. Given the irreconcilable conflict, the later enactments must be deemed to have superseded the mutual agreement elements of the earlier ones. (*City of Petaluma* v. *Pac. Tel. & Tel. Co., supra,* 44 Cal.2d at p. 288; cf. *People* v. *McCaskey, supra,* 170 Cal.App.3d at p. 415.) Accordingly, the trial court did not err in sustaining the community college districts' demurrers without leave to amend; the community college districts did not need mutual agreements either to offer their adult education programs or to receive apportioned funding for those programs.

II

Appellants additionally contend the trial court erred in granting the motion for judgment on the pleadings of the Chancellor and the Board of Governors of the California Community Colleges. The contention lacks merit.

A motion for judgment on the pleadings is tantamount to a general demurrer (*MacIsaac* v. *Pozzo* (1945) 26 Cal.2d 809, 812-813 [161 P.2d 449]; *Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 224 [162 Cal.Rptr. 669]), although it is not governed by statute and may be made at any time prior to a final judgment (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 267, pp. 567-568). On appeal from the granting of the motion, the standard of review is the same as for a judgment of dismissal following the sustaining of a general demurrer. (*Ramirez* v. *USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391, 397 [285 Cal.Rptr. 757]; *Tiffany, supra,* at p. 225.)

■ A petition for a writ of mandate pursuant to Code of Civil Procedure section 1085 "must plead facts showing that a public body or official has a clear legal and usually ministerial duty and that the petitioner has a beneficial interest in or right to the performance of that duty. [Citations.] [A] writ of mandate is not available to control the discretion of that public body or official. Although a court may order a public body to exercise its discretion in the first instance when it has refused to act at all, the court will not compel the exercise of that discretion in a particular manner or to reach a particular result. [Citation.]" (*Building Industry Assn.* v. *Marin Mun. Water Dist.* (1991) 235 Cal.App.3d 1641, 1645-1646 [1 Cal.Rptr.2d 625].)

■ Appellants sought a writ of mandate to compel the Chancellor and the Board of Governors of the California Community Colleges to exercise their discretion and resolve points of disagreement among the petitioners and their respective community college districts. Education Code section 8537 places that duty on the State Board of Education and the Board of Governors when a school district and a community college district are unable to reach a mutual agreement.

Inasmuch as the community college districts were not required to obtain mutual agreements, as discussed in part I, *ante*, there were no points of disagreement for the State Board of Education and the Board of Governors to resolve. Stated otherwise, there was no discretion they were bound to exercise. Accordingly, the trial court did not err in granting the motion for judgment on the pleadings.

The judgment is affirmed.

Vogel (Miriam A.), J., and Masterson, J., concurred.