Filed 3/14/16; pub. order 3/29/16 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| FAY STANIFORTH et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> THE JUDGES' RETIREMENT SYSTEM, <br><br> Defendant and Respondent; <br><br> JOHN CHIANG, as State Controller, etc., <br><br> Real Party in Interest and Respondent. | D068174 <br><br><br> (Super. Ct. No. <br> 37-2012-00093475-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M.

Pressman, Judge.  Affirmed.

Jorn S. Rossi and Paul G. Mast for all Plaintiffs and Appellants.

Reed Smith, Harvey L. Leiderman, Dennis P. Maio and Jeffrey R. Rieger for

Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

More than 35 years ago, our Supreme Court issued its opinion in *Olson v. Cory*

(1980) 27 Cal.3d 532 (*Olson I*) addressing a 1976 amendment to the then-existing version

of Government Code[1] section 68203 (section 68203). The *Olson I* opinion examined the extent to which the 1976 amendment, aimed at placing a limit on cost of living adjustments (COLA's) for the salaries payable to active jurists and (derivatively) also limiting the pensions payable to certain judicial pensioners, could constitutionally be applied to those active jurists and judicial pensioners. Since *Olson I*, numerous other courts have addressed issues stemming from *Olson I*, including whether a constitutional amendment designed to supersede *Olson I* and deprive active jurists and certain judicial pensioners of the benefits provided by the uncapped COLA's was constitutional (see *Olson v. Cory* (1982) 134 Cal.App.3d 85 (*Olson II*)), and whether interest was due on the payments owed to active and retired judges under the judgment announced in *Olson I*. (See *Olson v. Cory* (1983) 35 Cal.3d 390 (*Olson III*).) The present action, which produced this court's opinion in *Staniforth v. Judges' Retirement System* (2014) 226 Cal.App.4th 978 (*Staniforth I*), represents the latest progeny of *Olson I*.

A. *Staniforth I*

As we explained in *Staniforth I,* petitioner Faye Staniforth filed the present action on behalf of herself and similarly situated persons (together pensioners) alleging, as its principal claim against respondent The Judges' Retirement System (JRS), that JRS had not adhered to its obligations to pensioners under their interpretation of *Olson I* and that, as a result, over three decades worth of pension payments had been underpaid to pensioners. This principal claim, denominated the "*Olson I* claims" (*Staniforth I*, *supra*,

---

[1]     All further statutory references are to the Government Code unless otherwise specified.

226 Cal.App.4th at p. 981), sought a declaratory judgment that, under *Olson I*, jurists who served on California's trial court or appellate court bench during the time that section 68203 provided for unlimited COLA's were entitled to have their pensions adjusted upward based on the applicable COLA for each year, and the limit on the amount of COLA's (enacted by legislation the impact of which was evaluated in *Olson I*) could not constitutionally be applied to pensions earned by jurists who served on California's trial court or appellate court bench during the time that section 68203 provided for unlimited COLA's. The *Olson I* claims raised by pensioners sought to compel the JRS to adhere to pensioners' interpretation of *Olson I* and to recalculate the amount of judicial pensions owed to pensioners using the uncapped COLA's, and to pay arrearages and interest for the decades of underpaid pension payments. (*Staniforth I,* at p. 981.)

In *Staniforth I*, we concluded the trial court correctly sustained the demurrer by JRS to pensioners' *Olson I* claims, without leave to amend, because we agreed with the trial court's conclusion that pensioners' *Olson I* claims directly conflicted with the correct reading of *Olson I*. We concluded, contrary to pensioners' *Olson I* claims, pensioners were not entitled under *Olson I* to perpetual uncapped COLA increases to their pensions. (*Staniforth I, supra,* 226 Cal.App.4th at pp. 990-991.) As we explained:

> "*Olson I* merely reaffirmed that judicial pensioners had a right to a percentage participation in the salaries paid to active jurists, including 'the increment of pro-rata increase in the salary of the judge occupying the office formerly occupied by [the pensioner, which] salary fluctuates with cost-of-living increases' [quoting *Olson I, supra,* 27 Cal.3d at p. 542, fn. 7], but did not confer on or recognize any right of judicial pensioners to be exempted from changes in the underlying salary structure applicable to such active

3

jurists, including changes to the COLA's adopted by the 1976 amendment." (*Staniforth I, supra,* at p. 990, fn. omitted.)

However, we also concluded in *Staniforth I* that the trial court erroneously denied a subsequent motion that, in effect, sought leave to amend to separately state certain additional claims by a subgroup of pensioners. That motion to amend asserted, even assuming JRS had correctly (considering *Olson I*) implemented a system that employed capped COLA's to calculate *all* judicial pensions after certain dates, there was a subgroup of 10 class members allegedly not paid the entire amount due to them up to those certain dates,[2] and argued those additional claims by this subgroup could not be dismissed by demurrer. The trial court denied the motion to amend as to this subgroup of claims, concluding (1) this category of unpaid pension payments was not clearly part of the original petition, and (2) even if these claims had been separately pleaded, the death of the 10 jurists ended any further obligations by JRS to this subgroup of retirees under section 20164 and, additionally, this category of claims was time-barred by Code of Civil Procedure section 337.5. (*Staniforth I, supra,* 226 Cal.App.4th at pp. 991-992.)

---

[2]   The motion argued the present action encompassed (1) claims that seven trial judges whose retirement allowances should have been (but were not) calculated and paid based on the salary of an active trial court jurist as increased by an uncapped COLA until the first Monday in January of 1981, consistent with *Olson I*, and (2) claims that three appellate court justices whose retirement allowances should have been (but were not) calculated and paid based on the salary of an active appellate court jurist as increased by an uncapped COLA until the first Monday in January of 1987, again consistent with *Olson I*. The motion argued that, because the petition adequately alleged these 10 jurists had not been paid their retirement allowances during the 1970's and 1980's in accordance with this rate, the demurrer should be overruled as to this subgroup for these time periods or, alternatively, they should be granted leave to amend to allow this subgroup to more clearly and separately plead these claims. (*Staniforth I, supra*, 226 Cal.App.4th at p. 991.)

4

We rejected each of these three rationales and concluded the trial court should have granted leave to amend to separately allege these additional claims by the subgroup of pensioners. (*Staniforth, supra,* 226 Cal.App.4th at pp. 992-994.) However, we specifically "caution[ed] that our conclusion here is a limited one: the trial court should not have dismissed this segment of the alleged claims for these 10 jurists *on demurrer* but instead should have granted pensioners leave to amend to separately state this limited segment of claims. Whether these claims, once distilled, may be subjected to a motion for summary judgment based on properly introduced extrinsic evidence, *or based on other statutes of limitations that may be applicable but were not raised below*, are matters that must be determined on remand." (*Id*. at p. 994, italics added.)

B. Proceedings on Remand from *Staniforth I*

On remand, an amended petition was filed that separately stated claims by the heir or successors to each of the 10 jurists (petitioners), alleging the three retired appellate court justices had been underpaid their retirement allowances between 1977 and 1987, and alleging the seven retired trial judges had similarly been underpaid on their retirement allowances through 1981. The petition sought recovery of the unpaid principal amounts, along with interest, on behalf of the various heirs of or successors to the now-deceased jurists.

JRS demurred to this amended petition, arguing that all the stated claims, which sought recovery for payments to the retired jurists that allegedly should have been paid over two decades before the present action was filed, were barred by the statute of limitations under any possibly applicable statute. JRS argued the action would be time-

5

barred by the three-year statute of limitations provided by Code of Civil Procedure section 338, subdivision (a), providing a three-year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture," or by the four-year "catch-all" statute of limitations provided by Code of Civil Procedure section 343. (See *Bogart v. George K. Porter Co.* (1924) 193 Cal. 197, 201 (*Bogart*).) JRS also argued that a judgment entered in 1986 in *Olson v. Cory* (Super. Ct. Los Angeles County, 1986, No. CA000896) (*Olson IV*), directing the JRS to comply with *Olson I* and *Olson II*, triggered the 10-year statute of limitations under Code of Civil Procedure section 337.5, subdivision (b), for an "action upon a judgment or decree of any court . . . ."

Petitioners opposed the demurrer, asserting (1) the 1986 judgment in *Olson IV* was not a final judgment that would have triggered the 10-year statute of limitations under Code of Civil Procedure section 337.5, subdivision (b); (2) the present action was not an "action upon a liability created by statute" but was instead an action to enforce the retired jurists' contractual rights to pension benefits, rendering Code of Civil Procedure section 338, subdivision (a), inapplicable; and (3) the "catch-all" statute applies only to "action[s] for relief not hereinbefore provided" and was therefore inapplicable because section 20164, subdivision (b), purportedly provides that *no* period of limitations applies when the JRS owes money to a beneficiary.

The court sustained JRS's demurrer without leave to amend, and dismissed the action. Petitioners timely appealed.

6

ANALYSIS

A. <u>Standard of Review</u>

A party may demur to a complaint, alleging that the pleading does not state facts sufficient to constitute a cause of action, when the claims are barred by the applicable statutes of limitations. (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1482.) "When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper." (*Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 86.)

On appeal from an order dismissing a complaint after the sustaining of a demurrer, we review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Id.* at p. 967.) We liberally construe the pleading with a view to substantial justice between the parties. On appeal, we will affirm a "trial court's decision to sustain the demurrer [if it] was correct on any theory." (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808.) "[W]e do not review the validity of the trial court's reasoning but only the propriety of the ruling itself." (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757.)

7

B. The Action Is Time-barred Under Any Possibly Applicable Statute of Limitations

The face of the complaint demonstrates, and petitioners do not dispute, that for the subgroup of 10 retired jurists alleged by the present petition to have been underpaid, the last "underpayment" occurred in early 1987, and every potential member or beneficiary allegedly underpaid the benefits by JRS was deceased by January 1, 2005. The present action, pleading a common count for "money owed" to the heirs of those deceased jurists, was not filed until 2012, more than seven years after the last petitioner succeeded to his or her pleaded claim and at least 25 years after the last underpayment pleaded in the action.

The parties have not identified, and our independent research has not uncovered, either statutory or decisional law on which specific statute of limitations applies to the present claims. Indeed, petitioners' election to plead their claims as common counts hinders a disciplined analysis of the applicable statute of limitations, because the pleading obscures the theory on which they premise their claims. (See generally *Miller v. Brown* (1951) 107 Cal.App.2d 304 [common count for money owed subjected to two-year statute of limitations where premised on oral contract].) The complaint is unclear whether the claims asserted constitute an action to recover for breach of an oral contract (in which event the two-year statute of limitations under Code Civ. Proc., § 339 applies), or is an action to recover for breach of a written contract (in which event the four-year statute of limitations under Code Civ. Proc., § 337 applies), or is an action to recover for breach of an obligation imposed by statute (in which event the three-year statute of

8

limitations under Code Civ. Proc., § 338, subdivision (a) applies), or is an "action for relief not hereinbefore provided" (in which event the four-year statute of limitations under Code Civ. Proc., § 343 applies), or is some other form of claim that may have other requirements or statutes of limitations. Additionally, to the extent their common counts for money owed were premised on a claim that JRS had not satisfied the obligations it owed under the 1986 judgment in *Olson IV*, which was entered in an apparent class action lawsuit on behalf of California's active and retired jurists and appears to have compelled JRS to pay the class members in accordance with a pay rate based (at least in part) on the rights established in *Olson I* and *Olson II*, the claims would be subject to the 10-year statute of limitations under Code of Civil Procedure section 337.5, subdivision (b), for an "action upon a judgment or decree of any court . . . ."[3]

However, we conclude it is unnecessary definitively to divine petitioners' theory of liability to identify the applicable statute of limitations because we are satisfied that, under any and all of the possible theories underlying petitioners' common counts, all

---

[3]     Petitioners argue *Olson IV* was not a final judgment triggering Code of Civil Procedure section 337.5, subdivision (b), because it did not compel the payment of any money to class members. Although this argument does not undermine our conclusion that all possible periods of limitation have elapsed on the claims, we also note the record appears to undermine the claim that no order to pay class members was ever entered in *Olson IV*. Although the judgment entered in June 1986 did not itself establish the amounts due to individual class members or order payment thereof, the register of actions for that case number indicates that, after the appeal of the declaratory judgment was abandoned in November 1986, plaintiffs applied for an "Order Requiring Payment of Salary Increases and Interest," and the register indicates that application was granted in December 1986. Petitioners do not suggest that order, on becoming final, would *not* qualify as a final judgment sufficient to trigger Code of Civil Procedure section 337.5, subdivision (b).

9

claims by the heirs based on underpaid pension payments accrued at least seven years (if not decades)[4] before the present action was filed. Because even the *longest* of the foregoing possible statute of limitations periods on the claims would have expired well before petitioners commenced the present action, we affirm the trial court's ruling sustaining JRS's demurrer on the basis of the expiration of the statute of limitations (*Kennedy v. Baxter Health Care Corp., supra,* 43 Cal.App.4th at p. 808; *Orange Unified School Dist. v. Rancho Santiago Community College Dist., supra,* 54 Cal.App.4th at p. 757) unless, as argued by petitioners, *no* statute of limitations applies to their claims.[5]

Petitioners' only argument for preserving these claims is their interpretation of section 20164, subdivision (b)(2), which they construe as providing *no* time limit for

---

[4]    The ordinary rule that would appear to govern accrual of a cause of action based on alleged underpayment of a periodic pension payment would be the date of the underpayment (see *Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 462 [" 'The right to receive periodic payments under a pension is a continuing one [citation], and any time limitation upon the right to sue for each [installment] necessarily commences to run from the time when that [installment] actually falls due," ' " quoting *Dillon v. Board of Pension Commrs.* (1941) 18 Cal.2d 427, 430]), and the complaint below appears to allege the last possible underpayment to any of this subgroup was in 1987. However, to the extent petitioners' theory sought to pursue some independent cause of action possessed by the heirs, those heirs had succeeded to the claim not later than 2005 (the death of the last jurist of the subgroup of underpaid pensioners), at least seven years before this action was filed.

[5]    JRS has requested this court take judicial notice of a judgment entered June 18, 1986, in Los Angeles Superior Court case No. CA000437, as the final judgment in *Olsen I*, which triggered the 10-year statute of limitations under Code of Civil Procedure section 337.5, subdivision (b). Because we conclude that all possibly applicable statutes of limitations have expired, we need not definitively determine if the judgment in Los Angeles Superior Court case No. CA000437 triggered the 10year statute of limitations on petitioners' claims, and we therefore deny the request for judicial notice because such evidence is not relevant to our analysis and holding.

10

pensioners or (as in this case) the alleged heirs of pensioners to pursue collection of purported underpayments by the JRS during the last century.  Before examining this argument, we note that statutes of limitations, which have been characterized as statutes of repose (*Neff v. New York Life Ins. Co.* (1947) 30 Cal.2d 165, 169), are generally designed to "protect defendants from the necessity of defending stale claims and require plaintiffs to pursue their claims diligently.  [Citations.]  They are " ' "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." ' " (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 488.)  Our Supreme Court in *Bogart, supra,* 193 Cal. 197, discussing the Legislature's intent behind the comprehensive scheme of statutes of limitations legislatively prescribed by Code of Civil Procedure section 312 et seq., stated at page 201 that "[t]he Legislature has there specified the limitations applicable to a wide variety of actions, and then to rebut the possible inference that actions not therein specifically described are to be regarded as exempt from limitations, it has specified a four-year limitation upon '[a]n action for relief not hereinbefore provided for' ([§ 343]); *and where [the Legislature] has intended that an action shall be exempt from limitations it has said so in clear and unmistakable language*."  (Italics added.) Such "unmistakable language" is found, for example, in Code of Civil Procedure section 348, which entirely exempts from *any* limitations period a claim brought to recover

11

money or other property deposited with a bank, where the Legislature declared, "To actions brought to recover money or other property deposited with any bank, banker, trust company, building and loan association, or savings and loan society or evidenced by a certificate issued by an industrial loan company or credit union *there is no limitation.*" (*Ibid.*, italics added.)

We turn to petitioners' claim that section 20164 expressly exempts their claims from *any* period of limitations. That section provides:

> "(a) The obligations of this system to its members continue throughout their respective memberships, and the obligations of this system to and in respect to retired members continue throughout the lives of the respective retired members, and thereafter until all obligations to their respective beneficiaries under optional settlements have been discharged. . . .
>
> (b) For the purposes of payments into or out of the retirement fund for adjustment of errors or omissions, whether pursuant to Section 20160, 20163, or 20532, or otherwise, the period of limitation of actions shall be three years, and shall be applied as follows:
>
> (1) In cases where this system makes an erroneous payment to a member or beneficiary, this system's right to collect shall expire three years from the date of payment.
>
> (2) In cases where this system owes money to a member or beneficiary, the period of limitations shall not apply.
>
> (c) Notwithstanding subdivision (b), in cases where payment is erroneous because of the death of the retired member or beneficiary or because of the remarriage of the beneficiary, the period of limitation shall be 10 years and shall commence with the discovery of the erroneous payment.
>
> (d) Notwithstanding subdivision (b), where any payment has been made as a result of fraudulent reports for compensation made, or caused to be made, by a member for his or her own benefit, the period of limitation shall be 10 years and that period shall commence

12

either from the date of payment or upon discovery of the fraudulent reporting, whichever date is later.

(e) The board shall determine the applicability of the period of limitations in any case, and its determination with respect to the running of any period of limitation shall be conclusive and binding for purposes of correcting the error or omission."

Our role is to construe the statutory language to determine whether subdivision (b)(2) of section 20164 was intended to exempt from *any* limitations periods an action seeking to collect "payments . . . out of the retirement fund for adjustment of errors or omissions," as contended by petitioners.  When construing statutory language, "our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose."  (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)  We begin this task by examining the statutory language, giving it a plain and commonsense meaning.  (*Ibid*.)  However, "[w]e do not . . . consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes.  [Citation.]  That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes.  [Citation.]  We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole."  (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1107.)  We must "attempt[] to harmonize different parts of a statutory scheme, and to construe statutory language with a view toward achieving a result that corresponds to legislative intent and avoids an absurd or unworkable result."  (*Holmes v. Jones* (2000) 83 Cal.App.4th 882, 891.)

These principles convince us that the phrase relied on by petitioners—section 20164, subdivision (b)(2)'s statement that "[i]n cases where this system owes money to a member or beneficiary, the period of limitations shall not apply"—was intended *only* to mean the "*the* period of limitations" discussed in subdivisions (b) through (d) (i.e., the three-year or 10-year period for the *system's* ability to collect from a member for an erroneous payment) applies only to claims by the system against a member, and the *specified* period of limitations referred to in that subsection was not applicable when the system owed money to a member. However, a statement that this specific period "shall not apply" to actions in which the system owes money to its members is not, as petitioners' argument posits, synonymous with a legislative intent that "*no* period of limitations shall apply" when the system owes money to a member.[6] First, petitioners' interpretation requires us to rewrite language *actually* employed by the Legislature—i.e., "[i]n cases where this system owes money to a member or beneficiary, *the period of limitations shall not apply*"—to language reading "[i]n cases where this system owes money to a member or beneficiary, *no period of limitations shall apply*." We decline to rewrite the language because the Legislature has shown, by its enactment of Code of Civil Procedure section 348, that it is capable of clearly expressing an intention that no statute of limitations applies to a specific action when that is in fact its intent. (Cf.

---

[6] Our interpretation is also consistent with the grammatical terms employed by the Legislature. The language employed in section 20164, subdivision (b)(2), used a definite article ("the") to describe what "period of limitations" would not apply, connoting that it was intended to refer to a *specific* period of limitations (i.e., the specific period described in subdivision (b)(1)) rather than *all* periods of limitation.

14

*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 825 ["Where statutes involving similar issues contain language demonstrating the Legislature knows how to express its intent, ' "the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes." ' "].)

Second, and equally importantly, petitioners' construction of section 20164, subdivision (b), appears inconsistent with other interrelated provisions of the statutory scheme for correction of errors and omissions.  Section 20164, subdivision (b), specifically refers to "payments . . . out of the retirement fund for adjustment of errors or omissions . . . pursuant to Section 20160," and section 20160 specifies:

> (a) Subject to subdivisions (c) and (d), the board may, in its discretion and upon any terms it deems just, correct the errors or omissions of any active or retired member, or any beneficiary of an active or retired member, *provided that all of the following facts exist*:
>
> (1) *The request*, claim, or demand to correct the error or omission *is made by the party seeking correction within a reasonable time after discovery of the right to make the correction, which in no case shall exceed six months after discovery of this right*.
>
> (2) The error or omission was the result of mistake, inadvertence, surprise, or excusable neglect, as each of those terms is used in Section 473 of the Code of Civil Procedure.  [¶] . . . [¶]
>
> (b) Subject to subdivisions (c) and (d), the board shall correct all actions taken as a result of errors or omissions of . . . this system.
>
> (c) *The duty and power of the board to correct mistakes, as provided in this section, shall terminate upon the expiration of obligations of this system to the party seeking correction of the error or omission, as those obligations are defined by Section 20164*."  (Italics added.)

15

These provisions, which place extremely *limited* time constraints on a member to petition to correct errors by the system, appear antithetical to petitioners' claim that section 20164, subdivision (b), was intended give the heirs of a retiree an *unlimited* time to pursue alleged underpayments by the system. Contrary to petitioners' construction of section 20164, "payments . . . out of the retirement fund for adjustment of errors or omissions . . . pursuant to Section 20160" (§ 20164, subd. (b)) appear to be subject to the requirements of section 20160, which includes a requirement that the retiree file a claims notice "within a reasonable time after discovery of the right to make the correction, which in no case shall exceed six months after discovery of this right," rather than the unlimited time argued by petitioners.[7]

---

[7] Indeed, because "payments . . . out of the retirement fund for adjustment of errors or omissions" under section 20164, subdivision (b), appear to be subject to section 20160, and section 20160, subdivision (c), in turn specifically states the "power of the board to correct mistakes, as provided in this section, shall *terminate upon the expiration of obligations of this system to the party seeking correction of the error or omission, as those obligations are defined by Section 20164,*" it appears the death of the member may provide an outer time limit on the ability of *anyone* to seek "payments . . . out of the retirement fund for adjustment of errors or omissions . . . ." (§ 20164, subd. (b).) That is, because the statutory language states the obligations of the system to retired members only "*continue throughout the lives* of the respective retired members" (§ 20164, subd. (a), italics added), and also states the "power . . . to correct mistakes . . . shall *terminate upon the expiration of obligations of this system to the party seeking correction*" (§ 20160, subd. (c), italics added), the statutory scheme arguably contemplates that heirs may not pursue any claim for "payments . . . out of the retirement fund for adjustment of errors or omissions" (§ 20164, subd. (b)) not commenced by the member prior to his or her death. We need not definitively decide what outer time limits may apply to claims such as those asserted here, but instead make these observations because petitioners make no effort to reconcile these apparent limitations with their assertion the Legislature intended to exempt such claims from any time limits whatsoever.

Finally, we are mindful of the admonition that statutory language should be construed, where possible, in a manner that "avoids an absurd or unworkable result." (*Holmes v. Jones, supra,* 83 Cal.App.4th at p. 891.)  Petitioners' construction of section 20164, subdivision (b)(2), as providing no period of limitations whatsoever on alleged underpayments of retirement benefits would create an absurd or unworkable result. Under petitioners' construction, JRS would be required to defend claims long after it had lost the ability to effectively defend against the claims, because the deaths of the persons to whom the benefits were allegedly owed would foreclose JRS from deposing those persons or effectively obtaining records from them, and the passage of decades could result in faded memories and unsalvageable internal records necessary to defending against those claims.[8]  As the court in *Waterman Convalescent Hospital, Inc. v. State Dept. of Health Services* (2002) 101 Cal.App.4th 1433, 1441 observed in another context, " '[l]imitations statutes are intended to enable defendants to marshal evidence while

_____

[8]     Indeed, this case starkly illustrates the salutary purposes of requiring persons to timely interpose their claims.  In the judgment entered nearly 30 years ago in *Olson IV*, it is possible that petitioners' ancestors were part of the class because they received proper notice and did not elect to "opt out" of the class, and therefore the judgment would have been binding on them (*Cooper v. American Sav. & Loan Assn.* (1976) 55 Cal.App.3d 274, 284), which in turn would permit JRS to defend the present claims by raising the res judicata effect of the prior judgment.  (See, e.g., *Mattson v. City of Costa Mesa* (1980) 106 Cal.App.3d 441, 446 [" '[T]he doctrine of res judicata operates as a bar to the maintenance of a second suit between the same parties on the same cause of action.' [Citations.]  Under this aspect of res judicata the prior final judgment on the merits not only settles issues that were not actually litigated *but also every issue that might have been raised and litigated in the first action.*"], italics added.)  However, after the passage of three decades, it may be impossible to produce documentary evidence of which, if any, of petitioners' ancestors received the requisite notice but nevertheless remained in the class bound by the judgment in *Olson IV*.

17

memories and facts are fresh and to provide defendants with repose for past acts. [Citations.] . . . [T]he legislative goal underlying limitations statutes is to require diligent prosecution of known claims so that legal affairs can have their necessary finality and predictability and so that claims can be resolved while evidence remains reasonably available and fresh.' [(Quoting *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 755-756.)] ' " '[T]he right to be free of stale claims in time comes to prevail over the right to prosecute them.' [Citations.] The statutes, accordingly, serve a distinct public purpose, preventing the assertion of demands[,] which through the unexcused lapse of time, have been rendered difficult or impossible to defend. . . . [Citation.]" ' [(Quoting *Thomas v. Gilliland* (2002) 95 Cal.App.4th 427, 434.)]"

Although the Legislature undoubtedly may exempt claims from the general rules that place time limits on such claims, when it "has intended that an action shall be exempt from limitations it has said so in clear and unmistakable language." (*Bogart, supra,* 193 Cal. at p. 201.) Because section 20164, subdivision (b)(2), does not contain "clear and unmistakable language" allowing claims against the JRS for alleged underpayment to be prosecuted without limitation, but instead merely states that the three- (or 10-) year period applicable to the system's ability to collect from a member for an erroneous payment is not applicable to the converse situation, we reject petitioners' claim that section 20164, subdivision (b)(2), reflects a legislative intent to entirely exempt their claims from any period of limitations.

DISPOSITION

The judgment is affirmed.


McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.

Filed 3/29/16

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FAY STANIFORTH et al., | D068174 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00093475-CU-MC-CTL) |
| THE JUDGES' RETIREMENT SYSTEM, | |
| Defendant and Respondent; | ORDER CERTIFYING OPINION FOR PUBLICATION |
| JOHN CHIANG, as State Controller, etc., | |
| Real Party in Interest and Respondent. | |

THE COURT:

The opinion in this case filed March 14, 2016, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

BENKE, Acting P. J.

Copies to:  All parties